## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

SMITH DAVIS, ET ALS., V. PARKS G. KENDALL, ET ALS.

June 16, 1921.

Absent, Sims and Prentis, JJ.

1. ESTATES—*Jus Disponendi.*—The power of absolute disposition is the eminent quality of absolute property. He who has absolute power over an estate thereby acquires the absolute property.

2. WILLS—*Construction—General Rules of Little Weight—Intention Governs.*—Cases on wills may guide as to general rules of construction, but unless a case be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the courts, which always look upon the intention as the polar star, to direct them in their construction of wills.

3. ESTATES—*Jus Disponendi—"Use."*—The word "use" does not in its ordinary meaning import any power of disposition of the corpus referred to—the *jus disponendi* of the corpus—but the contrary; indeed, only the right to use and enjoy the benefit of the corpus is implied by the word "use."

4. ESTATES—*Jus Disponendi—Remainder Over—Whether First Taker Takes Life Estate or Fee Simple.*—When a person is given absolute dominion over property, whether the estate be legal or equitable, this constitutes a gift of the property itself, and any gift over of what remains at his death, or such part as he may not appropriate, or the like, is void. If the power is conferred it is immaterial whether it is exercised or not, the estate granted remains the same. If the absolute dominion is given, it is just as if the fee simple itself is given.

5. ESTATES—*Jus Disponendi—Remainder Over—Whether First Taker Takes Life Estate or Fee Simple—Intent.*—In each case, therefore, where the question arises as to whether the first taker takes a life estate or estates in fee, it is important to determine whether he has been given absolute dominion over the property, and the intent of the testator on the whole, if it can be ascertained, will aid in this determination.

6. ESTATES—*Jus Disponendi—Remainder Over—Whether First Taker Takes Life Estate or Fee Simple—Intent.*—The estate conveyed being the testator's, his will is the law of the court, unless

that will be against the law of the land. Hence, when he plainly intends a fee, even though the testator's expression is inartificial, a fee is given but his intent to limit a remaider on a fee is avoided, not that the court fails to perceive the intent, but because it is against the law.

7. ESTATES—*Powers—Life Estate With Power to Appoint—Whether Life Tenant Takes Fee or Life Estate.*—In cases of a life estate, in determining whether an added power of disposal given to the life tenant enlarges the estate of the life tenant, so as to give him a fee, or merely gives him a power to pass the reversion, and not an absolute interest, the intention of the testator must be ascertained and upheld. The mere fact that a power to convey the reversion is attached to a life estate will not necessarily enlarge the life estate of the first taker into a fee.

8. POWERS—*Estates—Power of Appointment.*—A power of appointment is not an absolute right of property, nor is it an estate, for it has none of the elements of an estate.

9. POWERS—*Construction—Intention.*—Powers are to be construed in accordance with the intention of the donor, or grantor, that intention to be gathered in general from the instrument itself.

10. ESTATES—*Power—Distinction Between Gift of Life Estate and Gift Generally with Power of Disposition.*—Where an estate is given to a person generally, or indefinitely, as contrasted with the gift of a life estate, as to A with power of disposition it is held to amount to a fee simple; thus, there is a distinction between a gift for life, with a power of disposition added, and a gift to one indefinitely, with the power of disposition by deed, or will. Under the former gift the first taker takes only a life estate, while under the latter he takes a fee simple.

11. POWERS—*Definition.*—A power is an authority enabling one person to dispose of the interest which is vested in another.

12. WILLS—*Construction—Jus Disponendi—Life Estate or Fee Simple—Case at Bar.*—In the instant case testator gave his wife all of his estate "for her sole use and benefit so long as she lives, and not to be subject to any debts, claims or demands of any future husband she may marry, and at her death to be disposed of as she may deem proper and think best."'

*Held:* That, the words "at her death to be disposed of" do not refer to the entire estate, but to the reversion, which was left in the testator when he carved out the life estate for the wife's support; that the wife lacked full power of disposition by both deed and will, without limitation or restriction, as to time, mode, or purpose, of its exercise, which serves to enlarge the life estate expressly given into a fee by implication; and

that it was not the intention of the testator to give the wife more than a power of appointment as to the reversion, and that power not having been exercised as to the property in question, the same passed by inheritance to the heirs of the testator.

Appeal from a decree of the Circuit Court of Orange county construing a will. Decree for defendants. Complainants appeal.

*Reversed.*

*Browning & Browning,* for the appellants.

*W. W. Butzner, S. A. Anderson* and *Shackelford & Robertson,* for the appellees.

The opinion states the case.

SAUNDERS, J., delivered the opinion of the court.

On May 5, 1881, Robert P. Davis, of the county of Orange, State of Virginia, acknowledged before witnesses the following will, which after his death in 1885 was duly probated:

"In the name of God, I, R. P. Davis, of the county of Orange and State of Virginia, being of sound mind, but in feeble health, and knowing the uncertainty of human life, do make this my last will and testament, and do hereby revoke any and all my former wills and testaments:

"First: I desire all my just debts, together with my funeral expenses, to be paid out of my estate, whether real or personal, as my executrix may deem best.

"Second: After the payment of my just debts and funeral expenses, I give to my beloved wife, Octavia Davis, all of my estate, both personal and real, for her sole use and benefit so long as she lives, and not to be subject to any debts, claims or demands of any future husband she may marry, and at her death to be disposed of as she may deem proper and think best.

23

"Third: I do hereby appoint my beloved wife, Octavia Davis, executrix of this my last will and testament, and having the fullest confidence in her, I desire that no security be required of her by the court.

"This given under my hand and seal this the 5th day of May, 1881, and signed in the presence of two witnesses, whose names are annexed to this paper.

"ROBERT P. DAVIS (s. s.)"

On October 27, 1913, his wife, Octavia Davis, then Octavia Nelson, acknowledged as required by law her will, which is herewith reproduced in part:

"I, Octavia Nelson, of the county of Orange, in the State of Virginia, do make this my last will and testament, hereby revoking all wills and codicils heretofore made by me at any time.

"After the payment of all my just debts and funeral expenses—

"First. I give and devise unto my great-nephew, Hugh G. Burruss, who has for many years resided with me, the tract of land on which I now reside, situated in the county of Orange and known as 'Linden,' it being my intention by this devise to include all the land attached to the original tract owned by me, as well as any and all additions which have been purchased by me at any time during my occupancy at any time.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Eleventh. For the purpose of carrying into effect the provisions of this will, my executor hereinafter named is vested with full power and authority to sell any real and personal estate of which I may die seized (save that devised under the first clause of this will to Hugh G. Burruss), and to convey the same in proper manner, and the pur-

chasers thereof shall not be held liable to see to the proper application of the purchase price of any real or personal property so sold.

"Twelfth. I nominate and appoint H. A. McCurdy, of the city of Richmond, as executor of this my last will and testament, and should he qualify as such, I request the court to allow him to do so without security.

"In testimony whereof, I have hereunto set my hand, at Orange, in the county of Orange, in the State of Virginia, this twenty-seventh day of October, in the year nineteen hundred and thirteen.

"OCTAVIA NELSON."

In the year 1916, Mrs. Nelson acknowledged the following codicil to this will:

"I, Octavia Nelson, do make this codicil to my last will and testament, heretofore executed by me and bearing date on the twenty-seventh day of October, in the year nineteen hundred and thirteen.

"First. Save as hereinafter designated, I hereby confirm my said will of 27th October, 1913, and the provisions of the same.

"Second. Having by said will devised unto my greatnephew, Hugh G. Burruss, the farm on which I reside and known as 'Linden,' together with the other lands attached, I now give and devise unto the said Hugh G. Burruss, all the personal property of every description on or about the said farm, including all household and kitchen furniture, jewelry, furniture, fixtures, live stock of every description; all crops growing or severed, all farm machinery and implements, and in general all and every article of personal property owned by me on or about the said farm, whether the same be herein particularly described or mentioned.

"Third. I hereby ratify and confirm all deeds, executed by me for real estate sold in the city of Richmond and elsewhere, the title to which I acquired under the will of my husband, R. P. Davis, and desire to vest in said purchasers and their assigns a fee simple title to said real estate, and my executor is hereby vested with full power and authority to execute and deliver to said purchasers and their assigns such further assurances of said real estate as may be required or found necessary.

"Fourth. I hereby revoke the tenth clause of my said will, wherein Octavia McDonald is made residuary legatee under the same.

"Fifth. The rest and residue of my estate I give and devise unto my great-nephew, Hugh G. Burruss.

"In testimony whereof, I have hereunto set my hand and seal this the 29th day of August, in the year 1917, at Orange in the State of Virginia.

"MRS. OCTAVIA NELSON (SEAL)."

By her will the testatrix devised to her great-nephew, Hugh G. Burruss, a tract of land in Orange county, known as "Linden," this tract including the original tract owned by Robert P. Davis, and a tract purchased by the testatrix in her lifetime containing about 138 acres. By the codicil to her will the testatrix left certain personal property on "Linden" to said Burruss, and made him her residuary devisee. Burruss died unmarried, intestate and without issue, before the death of the testatrix.

In February, 1918, the testatrix, Octavia Nelson, died, and in due course the above will and codicil were probated. Thereafter, petitioners filed their bill in chancery against Parks G. Kendall and others, her heirs, praying among other things the construction of the will of R. P. Davis.

The defendants demurred to this bill, and the case was heard upon the bill and exhibits therewith, and the demurrer.

The question submitted to the court for determination was: What estate did Octavia Davis take under the will of her husband, R. P. Davis?

The second paragraph of this will contains the testator's disposition of his estate, and is as follows:

"Second: After the payment of my just debts and funeral expenses, I give to my beloved wife, Octavia Davis, all of my estate, both personal and real, for her sole use and benefit so long as she lives, and not to be subject to any debts, claims, or demands of any future husband she may marry, and at her death to be disposed of as she may think proper, and deem best."

The Circuit Court of Orange county entered a decree on November 26, 1919, holding that Octavia Davis took an absolute estate under the clause, *supra,* in the real and personal property of the testator. From the decree containing the foregoing ruling, sustaining the demurrer, and dismissing complainant's bill, an appeal was allowed, thus bringing the entire matter before this court for review.

On the part of the appellants it is insisted that under the will of her husband Octavia Davis took a life estate, coupled with a power of appointment, and that having failed to execute this power as to a portion of the estate devised by her husband, the appellants are entitled to such portion, as the heirs-at-law of the said R. P. Davis.

The appellees maintain that this is a case in which the life estate is metamorphosed into an estate of inheritance by virtue of the rule announced in *May* v. *Joynes,* 20 Gratt. (61 Va.) 692, and other cases preceding and following that case.

[1] In *May* v. *Joynes,* the language construed plainly evinced the testator's purpose to give his wife the absolute power over the entire estate for her own purposes. This obviously gave her a fee as to the real estate, and an absolute property in the personal estate. "The power of absolute

disposition is the eminent quality of absolute property." He who has absolute power over an estate thereby acquires the absolute property. Hence, the conclusion of the court, *supra,* with respect to the character of the estate taken by the devisee, merely makes effective the manifest primary intent of the testator. But the secondary intent of the testator to dispose of any portion of the fee unused, or unappropriated by the devisee for her purposes, is frustrated by the court which holds that the limitation over of whatever remains at the death of the wife is inconsistent with, and repugnant to the fee simple, and, therefore, void for uncertainty.

Another feature of this case to be noted, is that the entire estate given is for the benefit of the wife. It is given for her uses and purposes. No criticism can be made of the finding that a fee was primarily given. The precise language of the testator, *supra,* is cited in this connection for reference hereafter: "I give my wife, subject to the provisions hereinafter declared, my whole estate, real and personal, and especially all real estate which I may hereafter acquire, to have during her life, but with full power to make sale of any part of said estate, and to convey absolute title to the purchasers, and use the purchase money for investment, or any purpose that she pleases, with only this restriction, that whatever remains at her death shall, after paying any debts she may owe, or any legacies she may leave, be divided as follows:    *    *."

In addition to *May* v. *Joynes,* many other cases are cited by the appellees in support of their contentions. These cases will be reviewed.

*Missionary Society* v. *Calvert,* 73 Va. (32 Gratt.) 357: This case is plainly *May* v. *Joynes.* The property is given to the wife for her natural life, or widowhood, followed by a provision that so long as the devisee remains the testator's widow, she is at liberty to receive from his executors, or his estate, such part of it as she may choose and to appropriate

it as she believes to be just and right. The same effort was made in this case, as in *May* v. *Joynes,* to dispose of any unexpended, or unused, balance. *Held,* that the wife took a fee. Doubtless to emphasize the distinction between a naked power of appointment and the right afforded the wife in this case, the court said: "It is not a mere naked power to appoint, or to dispose of, but a right to receive such part of the fund as she may choose, and to appropriate it as she believes to be just and right." 73 Va. (32 Gratt.) p. 363. In this language will be perceived the reason for the court's conclusion. That conclusion embodies the intention manifested by the testator when he gave his wife absolute power to appropriate, if she so chose, the entire estate directed to be sold and invested by the executors. The limitation over, for the reasons assigned in *May* v. *Joynes,* is avoided.

In *Carr* v. *Effinger,* 78 Va. 197, the husband bequeathed his wife five shares of stock, with specific directions with respect to selling same, and loaning, or investing, the proceeds. Later in his will he uses these words: "At the death of my wife, what bonds she may not have used, I give to my sisters." By necessary implication this will gave the legatee the right to use for her purposes these bonds in their entirety, thus giving her the absolute power over same, carrying the absolute property. The limitation over is avoided. Plainly, this too is *May* v. *Joynes,* without any new features.

In the case of *Cole* v. *Cole,* 79 Va. 251, the words construed were: "I give to my wife all my estate during her lifetime, and at her death half of the personal property that may be on hand, to do with as she may see proper." The words, "that may be on hand," inevitably implied that the testator intended that his wife might appropriate for her uses in her lifetime the entire personal estate. Hence, this is another case in which the absolute power to use and dispose of personal property afforded the legatee an absolute

estate in this property. The court, construing the language of the will, said: "In the present case the language employed is as if the testator had said: 'I give to my wife all of my estate, and at her death one half of the personalty that may then be on hand, to go to the heirs of Sampson Cole'." In this aspect the testator clearly gave his wife an absolute estate in the entire personal estate, with a limitation over of one-half of the same remaining at her death. This again is *May* v. *Joynes*, and the limitation over is void. But the court in this case strikingly referred to the lack of value of precedents, in the construction of wills, and emphasized the necessity of looking to the facts in each case to arrive at the intent of the testator, and thereby ascertain the one fundamental thing essential to a proper determination. Said the court: "After all, but little aid can be derived in the construction of wills from adjudged cases, as each case must be governed by its own facts and circumstances. It has, therefore, been well said that "it may be doubted if any source of enlightenment in the construction of wills is of much assistance other than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by the intrinsic circumstances surrounding its execution, and connecting the parties, and the property devised, with the testator, and with the instrument itself." 79 Va. p. 255.

[2] The same principle was pithily stated by this court at an early period: "Cases on wills may guide as to general rules of construction, but unless a case be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the courts, which always look upon the intention as the polar star, to direct them in their construction of wills." *Kennon* v. *McRoberts*, 1 Wash. (1 Va.) 96 1 Am. Dec. 428.

In *Hall* v. *Palmer*, 87 Va. 354, 12 S. E. 618, 11 L. R. A. 610, 24 Am. St. Rep. 653 the language construed was: "I

bequeath to my five daughters two-thirds of my estate, to be equally divided between them, and afterwards that the interest of two of them should be held by my executor for the sole use and benefit of them during their natural life, and at their death the balance, if any, to their children." The estate is directly given for the use and benefit of the two daughters, and the inevitable implication of the language used is that the entire estate, if desired, may be used for such use and benefit. Hence, on the whole, a fee is given, and the limitation over of the unused balance, if any, is void. This case is cited by the appellees as authority for the proposition that when an estate is conveyed "for the sole use and benefit of another during his natural life," these words alone, apart from the context, pass a fee. It is not clear that the court meant to say this, though the language employed is not happily phrased, but if so, it was an inadvertence. The conclusion is announced, that the two daughters took an estate in fee simple, is derived from the entire language used, the words "balance, if any," showing, as interpreted in other cases, and apart from other cases by necessary implication, that under the prior language, the estate, though given in words for life, could be used and disposed of to the last stiver for the use and benefit of the two daughters. This was that absolute and unqualified power of disposition and use which, by a doctrine of the common law surviving from the very earliest times, is construed as a gift of the absolute property. But if the devise had been phrased differently, as for instance, "for the sole use and benefit of my two daughters during their natural life, and at their death to my son, A." a very different situation would have been presented, and one in which the words, "for their sole use and benefit during their natural lives," would have passed merely a life estate. The context in this case, as so often happens, enabled the court to arrive at the real meaning of the testator in the first in-

stance, and a rule of law avoided his intent as to the unexpended balance.

[3] So far from the words in the devise of the life estate to Octavia Davis, to-wit, "for her sole use and benefit so long as she lives," indicating, as claimed on the authority of *Hall* v. *Palmer,* an "intent to give the devisee a right to use, enjoy and expend whatever she might wish of the estate during her life, including the principal or corpus," they indicate quite a different intent, according to the ruling of this court in *Hurt* v. *Hurt,* 121 Va. 413, 93 S. E. 672. In that case the court said: "The word 'use' does not in its ordinary meaning import any power of disposition of the corpus referred to—the *jus disponendi* of the corpus—but the contrary; indeed, only the right to use and enjoy the benefit of the corpus is implied by the word 'use'."

In *Bowen* v. *Bowen,* 87 Va. 438, 12 S. E. 885, 24 Am. St. Rep. 664, the testator devised his property to his wife "for and during her life," coupled with a provision that she might sell and convey the real estate, and receive the purchase money, and buy and sell with the proceeds such property for her own comfort and convenience as she might choose, without accountability to any one, adding these words, "in fact during the life of my said wife, I wish her to possess and enjoy the said property as if she enjoyed a fee simple and absolute estate." After stating that the "intention of a testator is to be gathered from the words used to express that intention," the court concluded, conformably to established principles, that the wife was given the absolute title, and the remainder was void for repugnancy.

This frequent reference in the cited cases to the intention of the testator plainly shows that the language used is construed to pass the fee, because the words of the testator indicate that intent, the whole matter, as stated by one authority, resting upon his intent. The limitation over is avoided,

not because the court fails to recognize the testator's intent in that respect, but because it is contrary to a rule of law. This emphasis upon the testator's intent may be illustrated by other citations.

"However inartificially a testator may express himself, yet if his intention can be discovered to mean a disposition of his whole estate in the thing devised, the court will supply such words as may be necessary to effectuate this intention." *Shermer* v. *Shermer*, 1 Wash. (1 Va.), 266, 1 Am. Rep. 460.

"The estate being the testator's to give, his will is the law of the subject, unless that will be against the law of the land." *Burwell* v. *Anderson*, 3 Leigh (30 Va.) 357.

In *Farish* v. *Wayman*, 91 Va. 430, 21 S. E., 810, the court was confronted with no new situation. The court held that "a devisee to A for life, but should she die and leave no child, in that case the property devised, or what remain of the same, to go to B," gave to A by necessary implication an unlimited and unrestrained right to the use of the entire property, which is a fee. The absolute power to use is the absolute power of alienation, and *vice versa.*

In *Davis* v. *Heppert*, 96 Va. 775, 32 S. E., 467, the deed to be construed conveys the land in question to a trustee to be held for the sole use and benefit of Mary G. Hendrick for and during the term of her natural life, and after her death to be conveyed to such child, or children, of Mary Hendrick as shall be living at the time of her death, provided that if the said Mary Hendrick should desire, she shall have the power for her sole use and benefit to sell and dispose of the property through her said trustee." No new question is presented in this case, and Mary Hendrick plainly took an equitable fee.

The right of Mary Hendrick to use the entire estate did not depend upon necessary implication, though such implication often provides this right. It was directly afforded

by the proviso. She took a fee, and any limitation over was void.

Another case of a fee with an attempted limitation over is *Brown* v. *Strother*, 102 Va. 145, 47 S. E., 236, which holds as follows: "Under a devise or bequest to two persons of all I possess on earth for their support to be used in no other manner, followed by a gift over, 'if there is anything left after their death' the first takers are entitled to the whole, and the gift is void." This case is obviously *May* v. *Joynes* in substance.

The same comment may be made upon *Hawley* v. *Watkins*, 109 Va. 122, 63 S. E. 560. In that case the first clause of the will gives the testator's sister a fee simple in certain property. The second clause is as follows: "I desire that the circuit court appoint a trustee to receive the said sum of money for the use and benefit of my said sister, the said money to be advanced to her as she may need it. Should any of the said money be in the hands of said trustee at the death of my said sister, my desire is that the same be equally divided between X and Y." Held, that the sister took an equitable fee in the real estate, and a full equitable ownership in the personalty. The court rested its decision in this case upon the fundamental principle that where "an absolute property is given to one, with an unlimited power to dispose of it, express or implied," a disposition of any unused property remaining at the death of the first taker is void.

In *Rolley* v. *Rolley*, 109 Va. 449, 63 S. E. 988, 21 L. R. A. (N. S.) 64, a husband devised to his wife "all of his property to be used and enjoyed by her during her life, or widowhood, in such quantities as may be necessary for her comfortable maintenance," with a limitation over of the unconsumed portion. Strictly in conformity with *May* v. *Joynes*, this language was held to pass a fee, and the limitation over was avoided.

*Hunter* v. *Hicks,* 109 Va. 615, 64 S. E. 988, is substantially *Rolley* v. *Rolley.* The deed in this case conveyed land to a trustee for the benefit of a married woman, and gave her power to have same sold, and to dispose of the property, and make such disposition of the proceeds of sale as she might think proper. *Held:* That she took an equitable fee, and the limitation over was repugnant.

The mere statement of the finding of the court in *Randall* v. *Harrison* reveals its likeness to *May* v. *Joynes.* "A gift of a life estate, with power to the donee to use any and all of the principal, vests in the first taker a fee simple in the lands, and an absolute estate in the personal property as given, and a gift over of what may be left is void." *Randall* v. *Harrison,* 109 Va. 686, 64 S. E. 992,

*Hansbrough* v. *Trustees of Presbyterian Church* is akin to *May* v. *Joynes* in its facts. A wife was devised property, "to have and to hold the same for her personal use and benefit, and to use the whole of said estate during her life, if she can thereby promote her happiness, and the welfare of our loved ones." Provision was made in the will for any unused balance. *Held: That* the wife was expressly given the absolute power of disposition, hence, she took a fee, *Hansbrough* v. *Trustees of Presbyterian Church,* 110 Va. 15, 65 S. E. 467.

In *Crutchfield* v. *Greer,* 113 Va. 232, 74 S. E., 166, the devise of the wife to the husband was in the following comprehensive and sweeping terms: "Should I die without heirs, (i. e., children), the entire property I own is to go to my beloved husband (G. M. Helms), to dispose of as he may wish." Plainly this language passes a fee simple. The court held as follows: "When an estate is given with the absolute power of disposition, either express or implied, it comprehends everything, and the donee takes the fee. Any

subsequent limitation over to another is repugnant and void." This conclusion is in strict conformity with principles heretofore cited. A reference in a later portion of testatrix's will to the death of her husband without a will was not considered to limit the husband to a disposition of the estate by will only. The language first cited was considered to indicate conclusively the intention of the wife to lodge in her husband the unrestricted and unlimited power to alienate the estate conferred.

*Taylor* v. *Johnson*, 114 Va. 329, 76 S. E., 325: This case on the facts, and in respect of the decision, is closely akin to many prior cases, the court holding that an express life estate, without limitation over of the remainder, and unlimited power of disposition, gives the grantee a fee simple. In this case there is no limitation over; otherwise it is *May* v. *Joynes*.

*Goodloe* v. *Woods*, 115 Va. 540, 80 S. E., 108: In this case a life estate was given, coupled with the power afforded by the following language, "to be disposed of by them at their deaths, as they may think proper." The court held that these words did not limit the power of disposition over the reversion to a disposition by will, but that a deed executed and delivered by the first takers in their lifetime was a valid execution. This ruling, however, was pure *dictum*, as it appears that precisely the same ruling had been made years before in the trial court. This ruling, no appeal having been taken, established the law of the case, rendering unnecessary (and it is so stated in the opinion) any ruling on the above point by the court. 115 Va. 544-5-6, 80 S. E., 110, 111. But the precise question of whether Samuel F. Woods, the life tenant, would have taken a fee, if the power had not been executed at all, was not considered or decided. Nor was it held, even as a *dictum*, that the tenant of a life estate, with power to dispose of an estate at death by will, or by deed in the lifetime to be effective at death,

has an unlimited power of disposition, and, therefore, takes the fee.

In *Avant* v. *Cook,* 118 Va. 1, 86 S. E. 903, the wife devised to her husband all her real estate, "to have and to hold to himself in his own individual right, with full power to control the same as he may elect, or to sell and convey the same to any person, or persons, whatsoever, and to use the proceeds as he may elect during his natural life, with remainder to others, in case he did not dispose of the property during his life." This so plainly creates a fee, and the limitation over is so plainly void according to *May* v. *Joynes* that comment is unnecessary.

In *Smith* v. *Smith's Executor,* 122 Va. 341, 94 S. E. 777, the testator "gave and devised all of his estate, real and personal, to his wife, for and during her natural life, to be used and enjoyed by her as she shall think proper, as fully as if the same were hers, in fee simple, and at her death, it is my will that my said estate shall pass to, and be equally divided amongst all my children then living, etc." No new question is presented here. The testator expressly gives to the life tenant absolute power over his estate, "as fully as if the same were hers in fee simple," and then provides for a limitation over. This is *May* v. *Joynes* pure and simple, and it is to be noted that the court, in its opinion, states the doctrine anew, as if it had not been formulated many times, thus emphasizing the precise limits within which it should be restrained. At that time *Honaker* v. *Duff,* 101 Va. 675, 44 S. E. 900, had been decided, and is referred to in the opinion. The court held in *Smith* v. *Smith,* that "Where the limitation is of a life estate, but there is given full power of disposition over the fee, which is conferred without limitation or restriction as to time, mode, or purpose, of its exercise, such full power of disposition would serve to enlarge the life estate expressly given into a fee simple by implication."

[4-5] *Conrad* v. *Conrad's Executor*, 123 Va. 711, 97 S. E. 336: In this case the court, as in other cases of this character, reverts to the necessity of ascertaining the real intent of the testator, and gathering from the instrument his general plan with respect to the disposition of his property. The statements of the court in this respect are reproduced: "The will is to be considered as a whole, so as to ascertain the general plan and purpose of the testator, if there be one, and we are to ascertain the meaning of the words used in the will in the sense in which they were used by the testator, if that can be ascertained." 123 Va., 716, 97 S. E. 338. The principles heretofore announced are also restated. "When a person is given absolute dominion over property, whether the estate be legal or equitable, this constitutes a gift of the property itself, and any gift over of 'what remains at her death,' or 'such part as she may not appropriate' or the like is void. If the power is conferred, it is immaterial whether it is exercised or not, the estate granted remains the same." 123 Va., 720, 97 S. E. 339. With this pronouncement we fully concur. If the absolute dominion is given, it is just as if the fee simple itself is given. Hence, in each case it is important to determine whether absolute dominion has been afforded. The intent of the testator on the whole, if it can be ascertained, will aid in this determination. Unlimited power to use the estate for support and mantenance is plainly intended in many of the cases cited, and that purpose is directly stated in *Rolley* v. *Rolley, Brown* v. *Strother,* and other cases *supra.*

*Steffey* v. *King,* 126 Va. 120, 101 S. E. 62, is merely *May* v. *Joynes,* the court holding, that "taking the language of the will as a whole, there is no escape from the conclusion that Mr. Kasey intended to give his wife the absolute power of disposal during her lifetime, and therefore, under the decisions, the remainder over was void."

The pronouncements of the cases prior to *May* v. *Joynes,* cited by appellees, are in harmony with the conclusions announced in that case and followed in subsequent decisions.

*Riddick* v. *Cahoon,* 4 Rand. (25 Va.) 547: In this case an estate was given by will to A and his heirs, and if he should die without issue living at his death, then so much of the estate as remained undisposed of by A to go to B. This was held to lodge a fee in A. Plainly, by necessary implication, A was given authority to dispose of the entire estate in his lifetime. Thus he had that power of absolute disposition which is the eminent quality of absolute property.

*Burwell's Executor* v. *Anderson,* 3 Leigh (30 Va.) 348: "From the earliest time, it has been among the received doctrines of the common law that an absolute and unqualified power of disposing, conferred by will, and not controlled or explained by any other provision, should be construed as a gift of the absolute property. In this the law but corresponds with the dictates of common reason. Every man of ordinary capacity would understand a power to dispose of a thing as he pleased, as a gift of the thing itself; and hence, every one who uses the phrase without qualification, is understood by the law as intending a gift. The power of absolute disposition is, indeed, the eminent quality of absolute property."

*Melson* v. *Cooper,* 4 Leigh (31 Va.) 409: The testator gave his son, William Cooper, a plantation, to him and his heirs forever. Further, the testator provided, that if the said William should die without a son, and not sell the land, he gave the land to his son George. Directly, in one sentence, and by necessary implication, in another, William was given the power of absolute disposition, that is, the powers of a fee simple owner. William took a fee, and the limitation over was void.

In *Brown* v. *George*, 6 Gratt. (47 Va.) 424, the testatrix bequeathed property to her daughter for life, said property or so much thereof as might be in existence at the daughter's death, to go to her children. A trustee was appointed in the suit to hold the property, and directions were given that all receipts given to the trustee by the daughter for payments, whether of the principal or interest of the property, should be as to him a full discharge. This was a case of authority given by necessary implication to consume the entire estate. Hence, the fee was afforded, and the limitation over was void. An early duplication of *May* v. *Joynes.*

In *Goodwyn* v. *Taylor,* personal property was involved. The court said: "It was rightly argued by the appellant's counsel that there is no difference between a bequest of a personal thing and a bequest of a use of it with power to dispose of the subject at will; consequently, in the present case the power given to the granddaughter, to whom one-fourth of the certificates was devised, to dispose of the principal to her heirs general, invested her with the whole property in that fourth." *Goodwyn* v. *Taylor,* 4 Call (8 Va.) 307.

In *Shermer* v. *Shermer,* the court seems to have reached its conclusions, not so much from the language of the will, as from the prior declarations of the testator, and the fact that the estate disposed of by the will was chiefly derived by his marriage. Said the court: "The intention is apparent that the wife should have the whole estate for life, and at her death one-half should go to her family and one-half to his. Their relative situation, and his prior declarations, show such intention to be liberal and just. His words have been scanned critically; he does not give her a power to dispose, but to name the persons she might choose to succeed to her part to whom the testator gives the money, and it is doing small violence to the words, even in their critical meaning, to say that by suffering her legal

representatives to succeed to her part she has actually made them her heir or heirs, as much as if she had pointed them out by an express devise." From this it appears that the court, upon the facts of the case, treated the wife's failure to make a will as an execution of the power of designation vested in her by the testator. *Shermer* v. *Shermer*, 1 Wash. (1 Va.) 266, 1 Am. Dec. 460.

*Robinson's Adm'r.* v. *Brock* is another case in which the court gave effect to the equity of the case rather than to the words used in the instrument. A marriage settlement was under consideration, and the question of the ownership of certain slaves was involved. Some of the slaves were originally the property of the husband, some came to him through his wife. On page 230 of the opinion, we find the following: "What then was the true intent and understanding of the parties to this deed at the time it was made, in case there should be no issue to the marriage? The answer to my mind seems plain and obvious that the lands, and certain slaves enumerated in the deed, should (on the death of the survivor) go to the family of Benjamin Robinson, and that the other six (particularly named) and their increase should go to the family of the said Susana, to-wit, the family of Brock," etc. *Robinson's Adm'r* v. *Brock*, 1 H. & M. (11 Va.) 212.

The foregoing cases cited by the appellees have been reviewed and analyzed in order that the dissimilarity of their facts from the facts of the case in judgment may be perceived. Those facts afforded the reasons for the conclusions reached. In many of these cases the fee is given expressly, or by necessary implication, for the stated purpose of providing for the support and maintenance of the first taker. In other cases the fee is given directly or by implication, though the purpose thereof is not stated; but the fee, in terms or by necessary implication, is lodged in the first taker without restrictions, and may be simply and readily

used by him for support, or for any other purpose. The donee in many cases is not restricted to a life estate, for the manifest reason that it is clearly the intention of the donor for the fee to pass. Hence, this intent is made effective by the court.

[6] "The estate conveyed being the testator's, his will is the law of the court, unless that will be against the law of the land." Hence, when he plainly intends a fee, even though the testator's expression is inartificial, a fee is given, but his intent to limit a remainder on a fee is avoided, not that the court fails to perceive the intent, but because it is against the law.

As stated in *Honaker* v. *Duff*, 101 Va. 675, 44 S. E. 900, the cases are difficult to reconcile, save on the principle of giving free play to the testator's intention. That intention is the master key. In some of the cases cited, the expressions used are rather broad, and if applied to all situations seemingly akin, would appear to abolish the doctrine of powers of appointment, and bring about a situation in which, in all cases of a life tenant holding a power of appointment, his life estate plus the authority to dispose of the donor's reversion would be so amalgamated as to lodge the fee in the life tenant. Yet this effect is certainly not intended by the "doctrine of *May* v. *Joynes*," for in the case of *Honaker* v. *Duff*, *supra*, in which the doctrine of *May* v. *Joynes* is discussed, a power of appointment is established, and the first taker restricted to a life estate. The conclusions occasionally derived from opinions, and apparently supported by language disconnected from the facts, must be tested by reference to the facts of the cases, for, as Chief Justice Marshall aptly said, "The positive authority of a decision is co-extensive only with the facts on which it is made."

The will of the testator, R. P. Davis, will be now considered upon the facts of the same, and having reference to the principles announced in the cases heretofore cited,

and in other cases to be hereafter cited, the effort will be made to ascertain the testator's intent and give it effect.

[7] Having traced the doctrine of *May* v. *Joynes*, and the underlying reasons therefor, it will not be amiss at this time to make some reference to the doctrine of powers of appointment, since appellants insist that Octavia Davis took in a life estate with a power of appointment under the will of her husband. As a general proposition it may be said that in cases of a life estate, in determining whether an added power of disposal given to the life tenant enlarges the estate of the life tenant, so as to give him a fee, or merely gives him a power to pass the reversion, and not an absolute interest, the intention of the testator must be ascertained and upheld. The mere fact that a power to convey the reversion is attached to a life estate will not necessarily enlarge the life estate of the first taker into a fee. If so, then in all cases in which this power is given to a life tenant, he would take a fee. But this is not the case even in Virginia where the doctrine of *May* v. *Joynes* prevails, as notably illustrated in the case of *Honaker* v. *Duff, supra.*

[8] "A power of appointment is not an absolute right of property, nor is it an estate, for it has none of the elements of an estate." 21 R. C. L. 773.

"A general power of disposition existing as a power does not imply ownership; in fact, the existence of such a power, as a technical power, excludes the idea of an absolute fee simple in the person who possesses the power, though where the power is for his benefit, he has the means of acquiring such right, interest, or title, and in all cases, by the execution of the power, the possession, right, title, or interest, is divested." *Id.* 773, and cases cited.

"A power is not an estate, or interest in lands, but an authority to create an estate, or interest." 31 Cyc. p.. 1038.

"A power is the individual personal capacity of the donee to do something." *Id.* 1039.

[9] "Powers are to be construed in accordance with the intention of the donor, or grantor, that intention to be gathered in general from the instrument itself." *Id.* 1056.

"A general power of appointment existing as a mere technical power, does not imply ownership, but excludes the idea of any absolute fee simple in the person possessing such power." *Id.* 1089.

In the same authority are found general statements of principle under the head of "Powers," clearly showing that the doctrine of *May* v. *Joynes* may be administered without conflicting with the doctrine of powers of appointment. For instance: "Where there is a gift to a person indefinitely, with a superadded power of disposal, the donee takes an absolute estate." *Id.* 1089.

"Where the fee is clearly intended to pass, the donee will not be restricted to a life estate." *Id.,* p. 1091. What is this but *May* v. *Joynes?*

In *Honaker* v. *Duff, supra,* the testator by a codicil to his will devised his plantation after the death of testator's wife, to Felix Gray, a trustee for his son Francis, to be held by this trustee for the use and benefit of said Francis and his family during their lives, and then to be willed by the son to whom he might choose. It was contended that Francis took a fee. The court held that the son was the sole beneficiary, the mention of the family being regarded as the expression of the motive of the gift. Further, the son was considered to take a life estate only at his mother's death, with the power to appoint the remainder by his will. The express life estate was not enlarged by the power of appointment. The court cites with approval the following extract from 4 Kent's Com., p 319: "A devise of an estate generally, or indefinitely, with power of disposition over it, carries a fee. But when the estate is given for life only, the devisee takes only an estate for life, though a power of disposition, or to appoint the fee by deed or will be an-

nexed, unless there should be some general intent of the testator which would be defeated by adhering to this particular intent, and the rule is more flexible when a specific mode of exercising the power is in point."

This is not inconsistent with *May* v. *Joynes,* and cases following same. The particular intent to give the life estate in such cases is inconsistent with the general intent to give the first taker the powers of a fee simple owner over the property. The further particular intent to dispose of any unexpended balance is avoided for the reasons heretofore stated.

The following citations are also made in *Honaker* v. *Duff:*

"In a note by Judge Burks, in 1 Virginia Law Register, p. 219, Judge Burks says: 'It cannot be doubted that though property is devised or bequeathed to one for life, even in the most express terms, yet if by other terms in the same instrument it is manifest that the devisee, or legatee, is invested with absolute power to dispose of the subject at his will and pleasure, he is not a mere life tenant, but an absolute owner, for there can be no better definition of absolute ownership than absolute dominion. In such case, the expressed life estate is enlarged into an absolute estate by the intention of the testator deduced from the instrument as a whole. Where, however, an estate for life is given in express terms, the language in other parts of the will, relied on to enlarge that estate into an absolute estate, *ought to be very clear indeed* to have that effect'." (Italics supplied.) 101 Va. 681, 44 S. E., 901.

The opinion proceeds: "In 3 Virginia Law Register, at p. 65, there is an article by a writer of acknowledged authority which, after stating that the cases are difficult to reconcile on any other principle than that of giving free play to the testator's intention, says the subject may be thus summarized:

"(1). Where an express estate for life is given, and a power of disposition over the reversion is annexed, the devisee for life will not take an estate in fee, notwithstanding the power to dispose of the inheritance. The express estate for life negatives the intention to give the fee simple, and converts these words into mere power, which, standing alone, would have been construed to carry an interest.

"(2). When a life estate is given to the devisee, with power of disposition, the devisee is held to take a fee simple, if otherwise the manifest intention of the will would be defeated."

This is stated to be by way of exception to the first general rule stated, and, as resting on intention, must depend on the construction of the particular will. "Thus where the limitation is of a life estate, but there is given full power of disposition over the fee by deed, or will, without limitation or restriction, as to the time, mode or purpose of its exercise, the devisee may be held to take, not the mere life estate expressly given, but the fee itself by implication," which is the doctrine of *May* v. *Joynes, supra.*

We have quoted freely from this article, not only on account of its intrinsic merit, but because the statement, that where there is a limitation of the life estate, with full power of disposition over the fee by deed, or by will, the devisee may be held to take, not the mere life estate, but the fee by implication, was relied upon in argument by counsel for appellants as authority to show that in this case Francis Duff took an estate in fee. We have, however, the best authority for the statement that the phrase "by deed, or will" is not to be taken distributively, but as referring to the full power of disposition by both deed and will, as together constituting the full power of disposition over the fee, which, if conferred without limitation

or restriction as to time, mode, or purpose of its exercise, would serve to enlarge the life estate expressly given into a fee by implication.

[10] "Where an estate is given to a person generally, or indefinitely, as contrasted with the gift of a life estate, as to A with power of disposition, it is held to amount to a fee simple." *Roberts* v. *Lewis*, 153 U. S. 367, 14 Sup. Ct. 945, 38 L. Ed. 747.

The authorities from which we have cited, including the valuable monograph in 3 Virginia Law Register, *supra,* clearly establish the distinction between a *gift for life, with a power of disposition added, and a gift to one indefinitely, with the power of disposition by deed or will.* (Italics supplied.)

These citations from *Honaker* v. *Duff* indicate that the doctrine of powers has not been abolished in Virginia by the doctrine of *May* v. *Joynes* but that the two doctrines co-exist in this jurisdiction, and are fundamentally distinguished, the whole matter "resting upon intention." A life tenant may have a power which he may so exercise, in connection with the grant of the life estate, as to pass a fee for his own uses and purposes, but the donee is not on that account invested with the fee, when the power is not exercised. If such was the case, Francis Duff would have been held to be the owner of the fee, since for valuable consideration, or for natural love and affection, he might have granted the life estate, and by virtue of his power of appointment, devised the reversion to his grantee, thus in the aggregate passing the entire estate. But the court said in this case: "So far from its defeating the manifest intention of the will, to hold that the devisee takes a life estate only, and not a fee, it would be in derogation of the apparent intention of the will to enlarge the life estate which is expressly given, into a fee simple by implication."

26

The crux of this whole matter, illustrated time and again in the precedents which we have reviewed, and emphasized in *Honaker* v. *Duff* by the cases which it cited, and by the conclusions of the court, is that the fee passes, or not, according to the intention to be derived from the words of the grantor, or testator, provided always that such intention is not contrary to law.

The language of the testator in the case in judgment is significant and unusual. He first gives to his "beloved wife," Octavia Davis, all of his estate, both personal and real, for her sole use and benefit, so long as she lives, and not to be subject to any debts, claims, or demands of any future husband." In this connection it may be remarked that the estate thus devised for life was a large one, and with reference to the laws as to married women, then existing, it was so devised as to give the wife the complete beneficial use of it for her lifetime, whether she remained his widow or married again. The wife is not given the absolute right "to use the entire estate for any purpose she pleases," or "to appropriate it as she may deem just and right," or "to do with it as she may think proper," or "for her own comfort and convenience as she may choose," or "to possess and enjoy the said property as if she enjoyed a fee simple and absolute estate," or the like, either expressly or by inevitable implication; but after the gift of the life estate, a large one be it remembered, for "her sole use and benefit so long as she lives," the succeeding phrase is, "and at her death to be disposed of as she may deem proper and think best."

These words obviously are not to be taken literally, since no one could dispose of property *in articulo mortis,* nor would it seem that they were intended to enlarge the authority of the life tenant over the estate for her benefit. There are several cases decided in other jurisdictions in which the reasoning of the courts is so precisely conforma-

ble to the sound and oft announced principle, that the intent of the testator must be diligently sought and, once ascertained, must be made effective, and the facts are so like the facts of the case in judgment, that they will be cited in this connection.

The first of these cases is *Wales' Admr.* v. *Bowdish's Executor,* 61 Vt. 26, 17 Atl. 1,000, 4 L. R. A. 819. In this case the will provides that the testatrix's brother should have the use and occupation of an estate during his natural life, and at his death the said estate to be conveyed by the executor to whom, and in the manner, the said brother should indicate. This case, it will be noted, is *Honaker* v. *Duff,* save that in the latter case the life tenant could dispose of the reversion by will only. It was contended in this case as in *Honaker* v. *Duff,* that the brother took a fee. This contention was based on the ground that the testator, by the language used, intended to give the brother a greater beneficial use than a life estate, and on the further ground that the brother could convert the entire estate to his own use by a sale of the remainder, and confirmation of the vendee's title by appointment. In a like roundabout fashion, Mrs. Nelson, in the case in judgment, could have converted the entire estate devised to her own personal use. In relation to these contentions, the court said in the case, *supra:* "We think the words of the will, construed in the light of the circumstances, do not import a purpose to create in behalf of the brother any greater beneficial use than to be derived by occupancy. * * It is plain that the testatrix's intention was to provide for the brother's life support, by the use and occupancy of the property, without interference by creditors, and without the power of disposition in their behalf, or for any purpose whatever, to take effect while the brother lived. * * It is more than unreasonable—it approaches absurdity—to suppose that the testator, the circumstances considered, intended by giving the power of appointment, to give Henry (the brother) the right to con-

vert to his own use in his lifetime the entire estate by a sale of the remainder, and then confirm the title in the vendee by appointment." 61 Vt. p. 27, 17 Atl. 1,000, 4 L. R. A. 819.

[11] When a power given is not intended to be exercised during the lifetime of a donee for his benefit, that power, according to various authorities, is not a general power. The thing given by a power of appointment is power, not property, and one attribute of ownership is title. A power, as defined in 21 R. C. L. 773, is "an authority enabling one person to dispose of the interest which is vested in another." The appointee takes title from the donor of the power. If the donor may be likened to a water supply, and the appointee to the receiving basin, the donee is the connecting pipe through which the water may flow.

In *Dunning* v. *Van Dusen,* 47 Ind. 423, 17 Am. Rep., 709, the court noted the distinction between the devise of an estate generally, with power to convey the same, and the specific devise in that case, which was as follows: "I give my wife all my property to have and to hold for her life, and to be disposed of at her death at her pleasure." This case is substantially the case in judgment. The former language was held to create a fee. As to the latter the court ruled "that there was no general devise, but the estate was expressly limited to the life of the devisee, and that to pass a fee, the power must be executed." The court propounded, but did not authoritatively answer, the query, whether under the language of the will the power could be executed by deed as well as will, or by will only. 47 Ind. 423, 17 Am. Rep. p. 709. In one of the cases cited in the case, *supra,* that of *Henderson* v. *Vaulx,* 10 Yerg. (Tenn.) 30, the testator devised an estate to his wife for life, and at her death to have the disposal of same to whomsoever she might think proper. Held that she took a life estate with a power of appointment. In another case cited, that of *Denson* v.

*Mitchell,* 26 Ala, 360, the testator concluded the devise of an estate to his wife as follows: "All of which she is to have and to hold during her natural life, and at her death to dispose of at her own will and pleasure." *Held:* That she took a life estate, with a power to dispose of the remainder.

The court, in *Dunning* v. *Vandusen, supra,* discusses the meaning and effect of the words "to dispose of at her death at her pleasure," as follows: "This language is susceptible of two constructions. First, as authorizing the devisee at any time to dispose of the reversion, this reversion of the estate so to be disposed of to commence at her death. Second, as authorizing her, "at her death," to dispose of the reversion. In other words, 'at her death' may have reference to the time of the commencement of the estate to be disposed, or to the time when the disposition may be made." 47 Ind. 430, 17 Am. Rep. 714.

"That the words 'at her death' have reference to the time when the disposition might be made, seems to us to be the true one, and the one reflecting the real intention of the testator, but on this point we make no decision, as it is not necessary." 47 Ind. 430, 17 Am. Rep. 715. "It may be remarked, however, that if it was the intention of the testator that the power was to be exercised at the death of the life tenant, it could not be exercised sooner." 47 Ind. 431, 17 Am. Rep. 715.

"Perhaps if Mary Craig could not execute the power until the time of her death, it could only be exercised by will. If she could not execute the power until the period of her death, and if, therefore, no instrument but a will could be made effectual for that purpose, it follows that the power must be executed by a will, or not at all. 47 Ind. 429, 17 Am. Rep. 714.

In *Borden* v. *Downey,* 35 N. J. L. 74, the court said that "The decisions relating to the subject could not be entirely reconciled, and some of them appeared to turn on subtle

distinctions, but there was a well marked principle running through them which it was important to preserve. This rule was that "where an estate for life was expressly given, and a power of disposition annexed to it, in such case the fee did not pass under the devise, but the naked power to dispose of the fee. But it is otherwise when there is a gift generally of the estate with a power of disposition annexed. In this latter case, the property itself was transferred. Thus, a gift to A, and to such person as he shall appoint, was absolute property in A without any appointment, but if it was to him for life, and after his death to such person as he should appoint by will, he must make an appointment in order to entitle that person to anything."

In the case of *Ruby* v. *Barnett* (12 Mo. 3), 49 Am. Dec. 112, is found the will of Wm. Horn, which in part is as follows: "First: My will is that my beloved wife, Polly Horn, have all my estate, both real and personal, so long as she may live. Second: My will is that my wife dispose of all of said estate as she may think most advisable at her death. I do hereby appoint my beloved wife, Polly Horn, executor of this, my last will, and it is my wish for her not to give security as my executor." This language closely resembles that of the will of R. P. Davis, and the interpretation of the same, embodied in the ruling of the court, is cited approvingly in *Honaker* v. *Duff, supra,* 101 Va. 682, 44 S. E. 900. Said the court: "The important question in the case is: What estate did Polly Horn take under the will of her first husband; whether an absolute one, or only an estate for life? * * * When the express estate for life is given by will, and a power of disposition is afterwards conferred the devisee takes but a life estate with a power of disposition; and if no disposition is made, the reversion will go to the heirs of the devisor. But if there is no previous devise of the life estate, but a simple power of disposition is be-

stowed, the devisee takes an absolute estate." *Held*: That Mrs. Horn took a life estate, with a distinct and naked gift of a power of disposition of the reversion. See also cases cited in note in 49 Am. Dec., *supra*. The language of the testator Horn is as broad as that used by R. P. Davis. The words used by Horn are: "My will is that my beloved wife dispose of all of said estate as she may think most desirable at her death." The words of Davis are: "* * * and at her death to be disposed of as she may deem proper and think best." In both wills the reference is necessarily to the reversion. Hence, the power given is not a power of disposition of the entire estate.

The words cited, *supra*: "* * at her death to be disposed of as she may deem proper, and think best," follow the disposition of the life estate in testator's property. The initial deposition completed, he doubtless projected his mind forward to the termination of that estate, and the death of his wife. This reminded him that some one should be designated to enjoy the reversion. He had the utmost love for, and confidence in, his wife. His love was manifested by his ample provision for her future maintenance, his confidence evinced by her designation as his executrix, without the usual requirement of security on the executorial bond. Manifestly, he was perfectly willing for this beloved and trusted consort to name the persons to participate in the reversion, and to fix the proportions in which they should take. The very instrument upon which he was then engaged suggested that the power of appointment which he proposed to confer upon his wife would be appropriately discharged by a like instrument. Hence the words, "at her death to be disposed of as she may deem proper, and think best"—words which, in this connection, appear to refer to the persons to be named, and their respective proportions, rather than as affording a wife, then in the enjoyment of a generous provision, authority to dis-

pose of the corpus of the entire estate for her personal purposes. Why should authority to the latter effect be afforded at her death, when the wants to be supplied, if any, would accrue in the lifetime? But if the words cited are construed as a power to designate the participants in the reversion, the entire attitude of the testator would be in complete harmony. If the words "at her death" were eliminated from this will, the words remaining would doubtless carry the fee. If the testator intended to give the fee, a mere devise of the entire estate would have effected that purpose. Evidently he had in mind a special and different intent when he expressly created a life estate, and used the words "at her death and," etc. The whole paragraph is made congruous by giving effect to the life estate, and treating the words, *supra,* as indicating the testator's intent that his wife should by will name the parties to enjoy the reversion. The estate for life is certainly very expressly given, and if the concluding words are relied upon to enlarge that estate into an absolute estate, they do not meet the requirement stated in *Honaker* v. *Duff, supra,* 101 Va. p. 681, 44 S. E. 901, that such words "ought to be very clear indeed to have that effect."

[12] If the language of the testator in the case in judgment is construed to indicate that the power of disposition given the wife was to be executed by will (the words 'at her death,' referring to the time when the disposition was to be made), then this case is strictly *Honaker* v. *Duff.* But suppose we take the other view, that the words authorize the devisee to dispose of the reversion by will, or by deed, to be effective at her death, still this would be far from indicating that the testator intended by conferring this authority to empower the devisee to use the entire estate for her own uses and purposes, and if his intent was otherwise, this intent should be regarded and given effect, since it is contrary to no rule of law, or public policy. If, in

addition to giving his wife an ample life estate, the testator intended to give her the authority to use the entire estate for her support, or for her other purposes, his language was clumsily contrived to that end.   Other testators, as illustrated in the cases cited, desiring to afford the wife, or other object of affection, the absolute power of alienation, expressed themselves, if inartificially, at least in terms of clear, definite and positive import.   Many illustrations of the efficient language used have been cited. This language operated directly upon the entire estate.   In the case in judgment the words, "at her death to be disposed of," do not refer to the entire estate, but to the reversion, which was left in the testator when he carved out the life estate for the wife's support.   We have pointed out that in this case (as in *Honaker* v. *Duff,* or in any other case of ordinary appointment), it is possible for the devisee to use the life estate, and the power, so as to convert the entire estate to her own uses, but this potential power, unexercised, does not give the donee a fee, nor does its bare possession indicate that the testator intended that it should be used for the donee's purposes, and if the testator did not so intend, then his real intention should be regarded.   One thing at least is clear, and that is that the testator intended to make, and did make, ample provision in his will for his wife's support, by the gift of a life estate in his entire property, and by the same will he bereft her of any power of disposition over the reversion to take effect while she lived.   Is this consistent with the theory that he intended to give the wife, by the concluding words of paragraph two, *supra,* a beneficial interest in the reversion?   Preferably, it indicates a purpose to give her merely a power of designation.   If it is argued that the concluding words, *supra,* were intended to authorize the use of the entire estate by Mrs. Davis, and not merely to give power to pass the estate, the answer is that it is in

27

the highest degree unlikely that with that thought in his mind, the testator would not have used the direct and effective language employed by other testators to announce their intention, rather than veil his intention in confessedly ambiguous language? May we not say, as was said in *Wale's Admr.* v. *Bowdish's Executor, supra,* in respect of substantially the same language: "It is more than unreasonable, it approaches absurdity, to suppose that this testator, the circumstances considered, intended by giving the power of appointment, to give the wife the right to convert to her own use in her lifetime the entire estate by a sale of the reversion, and then confirm the title in the vendee by appointment." But if this right was not intended to be given to the wife, she is restricted for her own purposes to the life estate, and having failed to exercise the power of appointment, the reversion passes to the heirs of the testator. This court has said in *Honaker* v. *Duff,* 101 Va. p. 683, 44 S. E., 902, that the phrase "by deed, or will," is "not to be taken distributively, but as referring to the full power of disposition by both deed and will as together constituting the full power of disposition over the fee, which, if conferred without limitation or restriction as to time, mode, or purpose of its exercise, would serve to enlarge the estate expressly given into a fee by implication." Further, that "the distinction is fully established between a gift for life, with a power of disposition added, and a gift to one indefinitely, with the power of disposition by deed or will." *Id.*

This is a gift for life, with a power of disposition added. While, in one view that we have considered, Mrs. Davis could dispose of the reversion by both deed and will, yet she can hardly be said to have enjoyed a full power of disposition conferred without limitation as to time, mode, or purpose, of its exercise. Any deed that she might have made would not have been effective to pass the entire estate until her death. The devisees in the cases that have been reviewed, and which illustrate the doctrine of *May* v.

*Joynes,* were in a position to pass the entire estate presently for their purposes, by a single instrument. The power of the devisee, in the instant case, to dispose of the fee is restricted, in any view that may be taken of the words "at her death to be disposed of as she may deem proper, and think best." She lacks that full power of disposition by "both deed and will, without limitation, or restriction, as to time, mode, or purpose, of its exercise," which, in the contemplation of the cases following *May* v. *Joynes,* serves to enlarge a life estate expressly given into a fee by implication.

Upon the whole, we conclude that it was not the intention of the testator, in the case in judgment, to give the wife more than a power of appointment as to the reversion, and that power not having been exercised as to the property in question, the same passes by inheritance to the heirs of the testator. Having reached this conclusion the decree of the Circuit Court of Orange county must be reversed, and this case remanded for further proceedings, not inconsistent with the principles and conclusions herein announced.

BURKS, J., concurs in result.

*Reversed.*