## CIRCUIT COURT OF THE CITY OF RICHMOND

Sovran Bank, N.A.,
Executor u/w of
Mary B. Harrison

v.

Virginia Axelrad et al.

March 8, 1991

Case No. HA 127-2

By JUDGE ROBERT L. HARRIS, SR.

This case is before the court on a Bill For Aid and Direction filed by complainant Sovran Bank, N.A. ("Sovran") for guidance in resolving a number of issues arising from the will and codicil of T. Whitfield Harrison ("Whit") and from the will of Mary Bain Harrison ("Mary"). At the hearing on February 13, 1991, Mr. Hardy as counsel for defendants, Virginia Axelrad, Edwin Bain, Jeffrey Furman and Ann L. G. Gerard, moved this court to consider and decide only one of the issues presented in Sovran's bill at this time. The court granted Mr. Hardy's motion, and the issue to be decided at this time is whether, under the terms of Whit's will, Mary effectively exercised her general power of appointment over the assets in Trust A. For the reasons set forth below, the court finds that Mary did not effectively appoint the assets in Trust A, and therefore, those assets "pour over" into Trust B in accordance with the provisions of Whit's will.

The parties proffered certain stipulations of fact which were accepted by this court's order of February 13, 1991. Copies of the wills referred to were made part of the stipulations. The relevant facts are as follows. Mary and Whit were married when Whit died on May 25, 1974. Both Mary and Whit were married only once, and Mary was

Whit's only heir. Whit's will, dated January 14, 1974, was probated before this court on June 14, 1974. Mary qualified as executrix and trustee under Whit's will.

In his will, Whit gave his residuary estate to his trustee to be divided into separate trusts, Trust A and Trust B. The trustee was to pay the net income from Trust A to Mary during her lifetime as well as so much of the principal as the trustee deemed necessary for Mary's support and maintenance. Whit also gave Mary an Unlimited Power of Withdrawal and a General Power of Appointment by Will with respect to Trust A. By the terms of Whit's will, the General Power of Appointment was exercisable only if Mary's will specifically referred to the power of appointment given to her under Whit's will.

Whit also provided that upon Mary's death, the assets in Trust A which were not "effectively appointed" by her should be added to Trust B and be disposed of in accordance with the provisions specified for Trust B. Whit made provisions for a number of specific bequests under Trust B and whatever remained in Trust B after those bequests were made was to pass in equal shares to defendants Children's Hospital, Sheltering Arms Hospital, Centenary Methodist Church, University of Richmond, and Virginia Home for Boys in Richmond ("the charities").

On December 4, 1979, Mary was found to be incapacitated and a guardian was appointed for her. After Mary became incapacitated, First and Merchants National Bank qualified as successor trustee to Mary for both Trust A and Trust B. Through mergers, Sovran succeeded First and Merchants National Bank.

Mary died on March 17, 1989. Her will, dated April 10, 1975, was probated on March 20, 1989. In her will, Mary "exercised" the general power of appointment over the assets in Trust A and named seven beneficiaries. She further provided that "[t]he balance of any funds remaining in the aforesaid Trust A established by [Whit], I give, devise and bequeath to my brother, E. L. Bain, and if he should predecease me, then to my sister-in-law, Mabel T. Bain." Mary went on to provide that if the balance of Trust A remaining at her death was insufficient to meet these bequests, she desired that the estate she owned prior to Whit's death be invaded to satisfy the bequests. E. L. Bain died on December 19, 1979, without descendants;

Mabel T. Bain died on April 27, 1984, without descendants. Both predeceased Mary.

Mr. Hardy, Mr. Pinckney, on behalf of the charities, and Mr. Warthen, as counsel for defendants, Lucie White, Esther White-Sprinkle, and Laura Wilson, submitted memoranda prior to the February 13th hearing. They, along with Mr. Douglass as counsel for University of Richmond, Mr. Stevens as counsel for Children's Hospital, Mr. Jeffreys as counsel for Centenary United Methodist Church, Mr. Markham as counsel for Sovran, and Mr. Schultz appeared at the hearing on February 13th. Mr. Hardy, Mr. Douglass on behalf of the charities, and Mr. Warthen submitted reply memoranda to this court on February 25, 1991.

It is well-settled that "[a] power of appointment is not an absolute right of property, nor is it an estate, for it has none of the elements of an estate . . . ." *Davis v. Kendall*, 130 Va. 175, 197, 107 S.E. 751, 758 (1921) (citation omitted). "Title to the property concerned remains with the donor until the power has been effectively exercised by the donee, at which time title passes through the donee as a conduit to the appointee." *Holzbach v. United Virginia Bank*, 216 Va. 482, 484, 219 S.E.2d 868, 870 (1975) (citations omitted).

The guiding principle in the construction of powers of appointment is that such "[p]owers are to be construed in accordance with the intention of the donor . . . to be gathered in general from the instrument itself." *Davis*, 130 Va. at 198, 107 S.E. at 758 (1921) (citation omitted). By the terms of his will, Whit's intent was to give Mary the power to appoint the assets in Trust A by her will and, to the extent she did not effectively do so, the remainder of Trust A would be added to Trust B. However, because Mary had a general power of appointment by will, a life interest in the income from Trust A and an unlimited power of withdrawal over the principal in Trust A, counsel have made alternative arguments regarding the exact nature of Mary's interest in the assets of Trust A.

One characterization of Mary's interest in the Trust A assets made by counsel for certain defendants is that Mary had a life estate in Trust A with a remainder over to Trust B to the extent Mary had not lawfully exercised her power of disposal. This characterization is inaccurate because Mary's life interest was only in the net income

from Trust A; it was not a life interest in the Trust A assets themselves. Nor was there a limitation in remainder over of the Trust A assets. Whit provided for a "taker in default" of the appointment, i.e., Trust B. Because there was no life estate in the Trust A assets themselves and no limitation in remainder over, § 55-7 of the Code of Virginia (1950), as amended, does not apply in this case.

Another characterization of Mary's interest in the Trust A assets made by certain defendants is that of a fee simple interest. However, Mary's right to the income from Trust A during her lifetime and her unlimited power to withdraw the principal did not combine with the general power of appointment to transform her interest in the Trust A assets into a fee simple estate. As donee of the power of appointment, Mary was only a conduit for title to the assets in Trust A. Title to the Trust A assets did not pass to Mary at Whit's death but remained with the trustee unless and until Mary effectively appointed those assets by her will.

The key issue to be decided then is whether Mary's appointment was effectively exercised as provided in Whit's will. The effectiveness of Mary's appointment must be measured at the time of her death. A bequest under a power of appointment by will takes effect at the death of the donee, not at the death of the testator. *Daniel v. Brown*, 156 Va. 563, 574, 159 S.E. 209, 212 (1931).

It is not disputed that Mary's attempted exercise of the power of appointment was procedurally valid under the terms of Code § 64.1-50. Mary expressly referred to the power of appointment in her will as Whit required her to do. However, the fact that the appointment was lawfully exercised does not mean that it was effectively exercised.

Both E. L. Bain and Mabel T. Bain, the appointees, predeceased Mary. "An appointment to a person who is dead is ineffective except as provided by an antilapse statute." *Restatement (Second) of Property* (Donative Transfers) sect. 18.5 (1984); *see Burruss v. Nelson's Ex'r*, 132 Va. 17, 19, 110 S.E. 254, 254 (1922). Certain defendants have argued that because the appointment "lapsed" upon Mary's death, Virginia's antilapse statutes, §§ 64.1-64.1 and 64.1-65.1, should apply to bring the assets of Trust A

into Mary's estate to pass to her heirs. Both Virginia statutes are written in terms of the failure of devises and bequests, not ineffective exercise of powers of appointment, which contain no property interest. No Virginia Supreme Court cases have construed these statutes to encompass powers of appointment, and it is this court's opinion that these statutes do not apply to the ineffective exercise of a power of appointment.

This court has also been urged to apply the doctrine of capture to find that Mary's attempted exercise of the general power of appointment brought the assets of Trust A into her estate to the extent of the failed appointment. Because the doctrine of capture is not recognized under Virginia law, this court declines to apply the doctrine in this case.

Because both E. L. Bain and Mabel T. Bain predeceased Mary, Mary's attempted exercise of her power of appointment was ineffective. Whit's clearly expressed intent was that if the Trust A assets were not effectively appointed by Mary, those assets would be added to Trust B. Because Whit's intent is controlling, the Trust A assets which were not effectively appointed by Mary must be added to Trust B to be distributed in accordance with the provisions for Trust B set forth in Whit's will.