# Staunton

## James F. McCready, et als. v. Robert N. Lyon, et als.

September 11, 1936.

Present, Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*W. V. Birchfield*, for the appellants.

*Sexton & Sexton* and *J. P. Buchanan*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

The purposes of this suit are to construe the "2nd" clause of the will of J. B. Whitehead, deceased, and to settle the accounts of the executor under said will.

The controversial clause in the will is:

"2nd. I will and bequeath to my beloved wife Susan J.

Whitehead the farm on which we now live including all the House hold and kitchen Furniture one horse and two mules 2 cows & half of all of the other cattle and Hogs on said Farm all Grain Bacon &c. and all Farming Implements, and one half of all money that may be left after paying all my debts &c. to have and to use during her natural life and at her death all the property including said farm to be sold and one-half the proceeds to be equally divided between my nieces and nephews then living or their heirs. The other half to be disposed of as my beloved wife Susan J. Whitehead may deem proper."

The will was probated on November 20, 1906. Susan J. Whitehead, the widow, died intestate in May, 1933.

The trial court held that the construction of the above clause of the will was controlled by *May v. Joynes,* 20 Gratt. (61 Va.) 692; that the widow took an absolute estate in the "tangible and intangible personal property bequeathed to her;" an estate for life in the whole of the farm, and after the expiration of said life estate a fee simple estate in an undivided one-half interest therein; that upon the death of Susan J. Whitehead intestate her one-half interest in the land and money passed to her heirs and distributees, respectively, while the other one-half interest vested in the nieces and nephews of the testator then living, or their heirs.

The appellants contend that the principles of *Davis v. Kendall,* 130 Va. 175, 107 S. E. 751, govern the construction of the will, and that Susan J. Whitehead took only a life estate in both the real and personal property, coupled with a power of appointment as to the reversion in one-half of said property; that since she died without exercising this power, this one-half interest passed by inheritance to the heirs and distributees of the testator, J. B. Whitehead.

In *May v. Joynes,* 20 Gratt. (61 Va.) 692, 693, the clause under interpretation was: "I give to my * * * wife, * * * my whole estate, real and personal, * * * to her during her life, but with full power to make sale of any part of the said estate, and to convey absolute titles to the purchasers; and use the purchase money for investment or any purpose that

she pleases; with only this restriction, that whatever remains at her death, shall, * * * be divided as follows * * * ."

This court held that under that language the wife took a fee simple in the real estate, an absolute property in the personal estate, and that the limitation over of "whatever remains at her death" was inconsistent with, repugnant to such fee simple and absolute property, and failed for uncertainty. There, the language plainly showed the testator's purpose to give his wife the absolute power in the entire estate for her own purposes.

The cases wherein this court has followed *May v. Joynes*, *supra*, are collected in *Davis* v. *Kendall*, 130 Va. 175, 181-196, 107 S. E. 751, and in an annotation in 36 A. L. R. 1222-1226. It would serve no good purpose to here review them.

Section 5147 of the Code of 1919, modifying the doctrine of *May* v. *Joynes*, of course, has no application to the present will probated in 1906.

In *Davis* v. *Kendall*, 130 Va. 175, 177, 107 S. E. 751, the clause under construction read: "After the payment of my just debts and funeral expenses, I give to my beloved wife, Octavia Davis, all of my estate, both personal and real, for her sole use and benefit so long as she lives, * * * and at her death to be disposed of as she may deem proper and think best." We held this to be a gift to the widow for life with an added power of disposition of the reversion, and that since that power had not been exercised as to the property in question, title thereto passed by inheritance to the heirs of the testator.

It will be observed that in the final analysis the language used by the testator in the case at bar is quite similar to that in *Davis* v. *Kendall*, *supra*. Here, as there, the wife is given an express life estate. The language is "to have and to use during her natural life." The clause then provides that at the death of the testator's wife, the property is to be sold and the proceeds divided in two parts, one of which is to go to those persons designated by the testator, and the other to those whom the testator's wife is given the power to designate.

Furthermore, it will be noticed that the wife is not here given the full and unrestricted power of disposition of the reversion such as was granted in *May* v. *Joynes, supra.* In the latter case there was annexed to the life estate "the full power to make sale of any part of the estate, and to convey absolute titles to the purchasers."

In the opinion of the learned judge of the trial court it is said that the right to "have and use" the personal property necessarily carries with it the right of absolute ownership. But with this we can not agree. A person may use tangible personal property during his or her natural life and yet not have the absolute right of disposition thereof. As to intangible property this court held in *Johns* v. *Johns*, 86 Va. 333, 10 S. E. 2, 3, wherein the testator gave to his wife $900 for life "to be used as she may think proper," that this use was of the life interest only, and that the wife did not take the absolute property as she contended.

In *Christian* v. *Wilson's Ex'rs*, 153 Va. 614, 626, 151 S. E. 300, 304, Mr. Justice Holt quotes with approval the following language by Professor Graves: "When an express estate for life is given, and a power of disposition over the reversion is annexed, the devisee for life will not take an estate in fee, notwithstanding the power to dispose of the inheritance. The express estate for life negatives the intention to give the fee simple, and converts those words into words of mere power, which, standing alone, would have been construed to carry an interest." See also, Graves' Notes on Real Property, section 243.

But it is argued on behalf of the heirs of the widow that the testator and his wife were a devoted couple throughout their long married life, and that surely it was not the intention of the testator to have given her such a limited estate in his property. The obvious reply is that if the testator had desired to give her absolute ownership of the personal property and a fee simple interest in one-half of the real estate, he would have said so. This required only a few simple words.

We can only judge of the testator's intent from what

he has actually said and not from what it may be supposed he intended to say. (*Widgeon* v. *Widgeon,* 147 Va. 1068, 1080, 133 S. E. 353.)

Parol testimony as to the meaning and interpretation placed by him on his written words was clearly inadmissible. 28 R. C. L., page 280, section 251; *Widgeon* v. *Widgeon,* 147 Va. 1068, 1072, 133 S. E. 353; *Ward* v. *Ottley,* 166 Va. 639, 186 S. E. 25 (decided June 11, 1936).

Our conclusion is that the learned trial court erred in holding that the construction of the above clause of the will was controlled by *May* v. *Joynes, supra.* We think the principles of *Davis* v. *Kendall, supra,* apply, and that the widow took only a life estate in both the real and personal property, coupled with a power of appointment as to the reversion in a one-half interest; that since she died without exercising this power, said one-half interest passed by inheritance to the heirs and distributees of the testator.

When the will was probated on November 20, 1906, B. F. Buchanan qualified as executor. In February, 1932, he died without having filed any inventory of the estate, or any account of his transactions as executor, and without, in fact, having made any final settlement of his trust.

On May 14, 1932, J. B. Buchanan qualified as administrator d. b. n. c. t. a. of the estate of J. B. Whitehead. He found on deposit in one of the local banks to the credit of the executor, the sum of $473.96. It is conceded by all parties that this amount is due by the estate of the executor to the estate of J. B. Whitehead.

Both the bill of complaint and answer asked for a settlement of the accounts of the said executor. The matter was referred by the court to a special commissioner before whom considerable testimony was taken.

The commissioner found that, in addition to the above sum of $473.96, the estate of the executor was indebted to the estate of J. B. Whitehead in the sum of $484.80—that is, in the total amount of $958.76.

The administrator and heirs of Susan J. Whitehead, deceased, excepted to this report on the grounds, (1) that the

evidence showed that an additional amount of $536.56 was due; and (2) that, in any event, the estate of the executor should be charged with interest on whatever amount was due to the estate of J. B. Whitehead, from November 20, 1907 (one year after date of his qualification).

On this exception the trial court sustained the commissioner's disallowance of the item of $536.56. But it reduced the amount of the indebtedness to $473.96, and disallowed interest thereon.

We have carefully considered the evidence which was before the commissioner. It is quite complicated, involves a mass of figures compiled from various sources, and covers the transactions of the executor over a period of nearly thirty years. With such a record before him, we think it remarkable that the commissioner was able to reduce the differences between the parties to the small amount of $536.56. This sum he excluded from the indebtedness claimed to be due on the ground that it represented a duplication of items. In this we can not say that the commissioner, who saw and heard the witnesses and had the advantage of examining the original exhibits, was in error.

Accordingly, the trial court was right in sustaining the commissioner's finding that the additional sum of $536.56 was not due.

The executor's personal representative filed in the court below no answer to the bill of complaint and no exceptions to the commissioner's report. He has filed no brief in this court. The other appellees, as well as the appellants, complain of the action of the trial court in reducing the amount of the indebtedness, fixed by the commissioner at $958.76, to $473.96, and in disallowing interest on the balance found due.

We think the trial court erred in both rulings. It justifies its action in reducing the amount of the indebtedness on the theory that an allowance to the executor of the usual commissions plus a reasonable attorney's fee will exceed the amount of the reduction of $484.80.

But this reasoning is at fault in two respects. In the

first place the executor was entitled to no commissions. These he forfeited by his failure to promptly settle his accounts in the manner required by law. Code of 1887, section 2679; Code of 1919, section 5409; *Crismond's Adm'x* v. *Jones*, 117 Va. 34, 83 S. E. 1045, Ann. Cas. 1917C, 155.

The partial payments made by the executor to Mrs. Whitehead, from time to time, did not constitute an actual settlement of his accounts required by law so as to take the demand for commissions out of the operation of the rule. *Nelson's Ex'r* v. *Page*, 7 Gratt. (48 Va.) 160, 166.

The record is silent as to why the executor failed to settle his accounts over a period of twenty-five years despite repeated requests to do so. We do not mean to say that there is any evidence in the record that he was guilty of any dishonest conduct. There is not the slightest evidence of such. But there is no denial of the fact that we are confronted with an unexplained but plain failure to comply with the statutes with reference to the settlement of fiduciary accounts.

In the second place there is no evidence that the executor, who was likewise an eminent lawyer, ever intended to charge the estate of J. B. Whitehead, deceased, or the widow, a fee for his legal services in settling the estate.

Therefore, we find no support for the action of the lower court in deducting $484.80 from the indebtedness which the commissioner found due by the executor's estate to that of the decedent.

Next, as to the liability of the executor for interest. Beginning with *Granberry's Ex'r* v. *Granberry*, 1 Wash. (1 Va.) 246, 1 Am. Dec. 455, the general rule was laid down that the personal representative was chargeable with interest at the rate of six per cent per annum on the balance in his hands due to the estate of the decedent at the end of each year. The rule has frequently since been applied. See *Burwell's Ex'rs* v. *Anderson*, 3 Leigh (30 Va.) 348, 358; *Preston* v. *Davis' Ex'rs*, 102 Va. 178, 184, 45 S. E. 865; *Denny* v. *Searles*, 150 Va. 701, 721, 143 S. E. 484; Harrison on Wills and Administration, volume 2, section 436, page 757; 4 Minor Inst. (3d Ed.), page 1375.

■ We find in the present case no circumstances to justify an exception to the general rule long established in this jurisdiction. The record is clear that the sum of $958.76, which the commissioner found to be due by the estate of the executor to the estate of J. B. Whitehead, represents the balance of certain moneys which came into the executor's hands within the first year of his administration. It should, therefore, bear interest from the end of that year, to-wit, November 20, 1907.

This interest should run from the above date until the date of the death of the widow, Susan J. Whitehead, in May, 1933, when this suit became necessary to construe the will of J. B. Whitehead.

Since the widow was entitled during her life to the use of one-half of the money derived from the estate, one-half of the interest accumulated during her lifetime on the said sum of $958.76, and due by the executor, should be paid to her administrator. The other one-half of said accumulated interest should be paid to the distributees of the testator, J. B. Whitehead.

The principal sum of $958.76 should, under the proper interpretation of the "2nd" clause of the will, as stated above, be paid to the distributees of the testator, J. B. Whitehead.

The decree appealed from will be reversed and the cause remanded for further proceedings in conformity with the views herein expressed. The appellants having substantially prevailed here will recover their proper costs in this court.

■ ■ Code, section 3528, provides: "In every case in an appellate court, costs shall be recovered in such court by the party substantially prevailing." While the terms of this section are mandatory (*Ficklen* v. *City of Danville*, 146 Va. 426, 435, 131 S. E. 689, 132 S. E. 705; *Scott* v. *Doughty*, 130 Va. 523, 526, 107 S. E. 729), the prevailing parties should recover only such items as are properly allowable as costs. The expense of printing extraneous and unnecessary matter in the record is not recoverable as a part of the costs of the prevailing party.

■ Here the record contains much unnecessary matter.

Although the suit involves the construction of only one clause of the will, that whole document is printed *in extenso* three times. Other accounts and exhibits are printed two or three times. Appropriate cross-references would have avoided these duplications.

There are included fifty-three letters signed by counsel for the appellees, covering forty-one printed pages. These are directed to opposing counsel, the commissioner, and others, and deal with fixing dates for hearings before the commissioner, and other like minor details. They, of course, have no place in the record.

There are also printed memoranda of argument by counsel for both parties before the commissioner, attached to which are numerous statements of accounts and exhibits elsewhere found in the record. The arguments contained in these memoranda are largely repeated in the briefs filed in this court, and should not have been incorporated in the record.

By following sections 6340, 6341, and 6342 of the Code, dealing with the contents of the record, the latter could have been reduced to one-half its present volume. This would have resulted in a saving of costs to the litigants and much unnecessary labor to this court.

The expense of printing this extraneous matter should be borne equally by appellants and appellees. The costs will be taxed accordingly.

*Reversed and remanded.*