## Richmond.

HUGHES V. WILLIAMS.

MARCH 14, 1901.

Absent, Whittle, J.*

1. TRUSTS AND TRUSTEES—*Discretionary Trust—Imperative Power.*—A trust cannot be said to be discretionary which requires the trustee to provide and supply all necessary provisions and supplies for the grantor and his minor children, and creates a charge therefor on the corpus of the estate granted. The power conferred is imperative, and, upon the death of one of two trustees, the power survives to the survivor, and if not exercised by him, a court of equity has jurisdiction to carry it into execution.

2. TRUSTS AND TRUSTEES—*Care Required of Trustee.*—The trustee in a deed of trust containing the above mentioned powers and authority is held to the same degree of prudence and care as a reasonably prudent and careful man would exercise in the conduct of his own affairs under ilke circumstances.

3. TRUSTS AND TRUSTEES—*Expenditure of Corpus.*—Under the terms of the above trust, the trustee had the right to charge the *corpus* of the trust subject with the necessary support of the grantor and his minor children, and, having in good faith expended more than the full value thereof in a manner fully authorized by the provisions of the deed, there is nothing left for division among the heirs of the grantor, and there can be no decree against the trustee.

Appeal from a decree of the Circuit Court of Campbell county, pronounced May 10, 1900, in a suit in chancery, wherein the appellees were the complainants, and the appellant was the defendant.

*Reversed.*

*Argued before Judge Whittle qualified.

The opinion states the case.

*Kirkpatrick & Howard,* for the appellant.

. *Lee & Howard,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

This appeal from a decree of the Circuit Court of Campbell county, involves the construction of a trust deed, which, omitting the description of the property embraced therein, consisting of a tract of about 509 acres of land in Campbell county known as " Yellow Branch," and certain personal property, is as follows:

" This deed made and entered into the 6th day of April, in the year 1888, by and between James E. Hughes of the one part, and W. S. Hughes and B. E. Hughes, parties of the second part, witnesseth: That whereas the said James E. Hughes is now in feeble health, and does not wish to be burdened with business cares, and whereas he has entire confidence in the capacity and integrity of the said W. S. Hughes and B. E. Hughes, who are his sons;

" Now, therefore, this deed further witnesseth: That for and in consideration of the premises, and the further consideration that the said James E. Hughes desires to preserve his property in tact, so that it may, after his death, go to his heirs, in accordance with the law of descents of Virginia, and the further consideration of five dollars in hand paid by the said parties of the second part to James E. Hughes, the receipt whereof is hereby acknowledged, he, the said James E. Hughes doth give, grant, sell and convey to the said W. S. Hughes and B. E. Hughes the following property, to wit:　*　*　*　*　but upon the following trust and none other, that is to say, that the said James E.

Hughes and his minor children are to be allowed to occupy, use, and enjoy the property hereby conveyed, and the said children are to remain with him until and so long as in the opinion of the said W. S. and B. E. Hughes it shall seem best for them to be at some other—such place may be provided for them by the said W. S. and B. E. Hughes, and, further, that the said W. S. Hughes and B. E. Hughes are to provide and supply all necessary provisions or supplies of all kinds which shall be necessary for the comfort of the said James E. Hughes and his said minor children, over and above what he may be able to make upon the property hereinbefore conveyed, for which they are to be allowed to charge cost prices against the said James E. Hughes, which shall be a charge upon his estate, and that the said W. S. Hughes and B. E. Hughes shall preserve and keep in repair the property hereby conveyed with a view to the comfort of the said James E. Hughes, as well as its preservation, and that they will charge therefor actual costs; that for the use and occupation of the property hereby conveyed, no rent shall be charged against the said James E. Hughes, and in case of his death it shall be the duty of the said W. S. Hughes and B. E. Hughes to have the property hereby conveyed equally and justly divided amongst all of his children according to the law of descents above referred to, unless in their judgment the same should be sold and the proceeds distributed upon the same principle."

There is practically no conflict in the testimony as to the circumstances under which the deed was executed, and none as to the causes which led up to it.

In 1888, and for some years prior, the grantor, James E. Hughes, a widower, with his four unmarried daughters, three of whom were minors, resided upon his farm in Campbell county. His habits were not good, and became such that it was regarded as unsafe for his daughters to remain with him at the farm.

The last of March, or the first of April, 1888, the adult
daughter sent a messenger to Lynchburg to request her two
brothers, B. E. and W. S. Hughes, to come to the farm, which
they did; and the four girls were taken that night to Lynchburg.
At that time James E. Hughes was intoxicated, and one or the
other of the brothers visited the farm every day, until the father
was in a condition to talk over the situation. After he became
in a condition to transact business, it was decided to make the
deed, which was done. It was agreed that the girls should go
back to the farm, and there remain as long as it was safe for
them to do so, and their father conducted himself properly.
In September, 1888, W. S. Hughes, one of the trustees named
in the deed, died; and in January, 1889, the grantor's eldest
daughter, Dolly J., married Dr. Williams, and went to Lynch-
burg to live, leaving her three younger sisters with their father
on the farm. The intoxication of the father for some time after
the deed was made was less frequent than before, but he by no
means conducted himself in a manner to inspire confidence that
it was safe or proper to permit his minor daughters to remain
upon the farm with him alone. Matters continued in this way
until June, 1890, when the father's habits became much worse.
Whereupon B. E. Hughes, the surviving trustee, took charge
of the management of the farm, and removed the three daughters
to his home, in Lynchburg. On December 1, 1890, the father,
under a promise of reformation also came to Lynchburg to
live with his son, B. E. Hughes, where he remained, keeping his
promise of reformation, with one exception, until his death, in
July, 1896.

In December, 1898, the appellees, Dolly J. Williams and
Agnes D. and Margaret S. Hughes, infant daughters of W. S.
Hughes, deceased, by next friend, filed their bill against the
appellant, B. E. Hughes and others, the object of which was to
have B. E. Hughes settle an account of his transactions as trustee
under the deed of April 6, 1888, and to have the shares of the

complainants in the trust property set apart to them, they claiming that by the provisions of the deed they had a vested interest in the property which could not be consumed in the administration of the trust.

Appellant rendered before a commissioner, to whom the cause had been referred, a statement of his transactions as trustee under the deed, which showed that he had expended in the improvement of the trust property, and in the support and maintenance of its beneficiaries, over and above his receipts, the sum of $16,826.24. The commissioner, disapproving the manner in which appellant had administered the trust, returned his report, together with the evidence upon which it was based, and a statement of the trust account upon a basis that he deemed just and right " with reference to the interests of the remaindermen, under the deed," whereby a balance of $5,626.66 was ascertained to be due appellant as of January 1, 1897, which constituted, in the opinion of the commissioner, a charge upon the farm, and the only part of the trust property remaining, valued, according to the proof, at $2,500.00 as of June 1, 1890. After discussing first whether or not the improvements put upon the farm by appellant should be charged upon the *corpus* of the trust property, and holding that they should not be, the commissioner in his report, says:

" Second. Under the terms of the deed the trustee undoubtedly had the right to encroach upon the *corpus* of the trust subject, for the support of James E. Hughes and his three minor children."

" Third. The annual rental value of the land, as gathered from the testimony of all of the witnesses, at the time the trustee took charge of it, in 1890, I ascertain to be $175.00, which is a liberal estimate, and 7 *per cent.* on the value thereof determined as aforesaid."

" Fourth. The fixed charges, if I may so term them, of taxes

and insurance, which are to be deducted from the rent as above fixed, I place at $50. The taxes were about $35.00 in 1890, and I think about $15 a reasonable sum to allow for what insurance it would have been prudent for the trustee to have carried on the buildings."

Exceptions were filed by appellees to this report, which were sustained, and the decree of the court was that the appellees " are entitled, as of the 11th day of July, 1896 (the date on which James E. Hughes died) to two-sevenths interest (one-seventh to Dolly J. Williams and one-seventh to Agnes D. Hughes and Margaret S. Hughes jointly) in the real estate in the bill, etc., mentioned, at a valuation, exclusive of the improvements made by B. E. Hughes, which valuation is ascertained to be twenty-five hundred dollars, and that the same is a charge upon said real estate, etc., and, further, that, unless B. E. Hughes, or his grantee of the real estate paid to appellees within sixty days, their ratable share of the valuation of the real estate, commissioners appointed for the purpose should sell the same," etc.

It is contended for appellees that the powers conferred by the deed of trust were highly discretionary, and, upon the death of W. S. Hughes, the powers conferred upon appellant, the surviving trustee, were revoked. In support of this contention the case of *Dillard* v. *Dillard*, 97 Va. 434, is cited.

The decision in that case is not applicable to the case under review. There the question was whether a discretionary power confided by the testatrix, Mrs. Dillard, to three trustees by name, though coupled with an interest, could be executed by the survivors after the death of one of the trustees or donees of the power, and it was held that the trust was one of discretion or of personal confidence, such as a court of equity would have no jurisdiction over to interfere with the exercise of the power by the trustee, so long as he acted in good faith, nor to execute the

trust, nor to appoint a trustee in the place of the deceased trustee, in whom the discretion and confidence was reposed.

"If the law were otherwise (says the opinion by Riely, J.), then upon the death of one of the trustees, the two surviving could execute the power, and upon the death of one of them, the sole survivor could do so, and might dispose of the property in a way which the other two trustees in their life-time always opposed and prevented, and thereby frustrate the very object of the testator in entrusting its disposition to the joint judgment of all three of them, and defeat his testamentary intent."

Here the deed in question imposed upon the trustees a duty annexed to the trust which forms an integral part of the deed. The power conferred is imperative, and if not exercised by the trustees or either of them, a court of equity had jurisdiction to carry it into execution. The surviving trustee, B. E. Hughes, therefore took the estate conveyed by the deed with a duty annexed to it. 2 Perry on Trusts, sec. 505. Supplies furnished by a stranger for the support of the father and his three minor daughters would have become a charge upon the trust property had the trustee declined to execute the trust. It is true, the deed declares the desire of the grantor to preserve his property intact so that it might after his death go to his heirs in accordance with the law of descents, and directs the trustees named in the deed, after the death of the grantor, to have the property conveyed "equally and justly divided amongst all of his children according to the law of descents," etc., but the deed imposed upon the trustees not only a power but a duty defined thus: "To provide and supply all necessary provisions or supplies of all kinds which shall be necessary for the comfort of the said James E. Hughes and his said minor children, over and above what he may be able to make upon the property hereinbefore conveyed, which they (the trustees) are to be allowed to charge at cost prices against the said James E. Hughes, which shall be a charge upon his estate, and that the said W. S. Hughes and B. E.

Hughes shall preserve and keep in repair the property hereby conveyed with a view to the comfort of the said James E. Hughes, as well as its preservation, and that they will charge therefor actual costs."

While appellant, in the administration of this trust, is to be held to the same degree of prudence and care that a reasonably prudent, careful man, in the conduct of his own affairs, would exercise under the same circumstances, language could not have been employed that would have more plainly imposed upon the trustees the duty of providing for the grantor and his three minor daughters a support, and making the cost of supporting them, over and above the products of the trust property, a charge upon the *corpus* of the trust fund.

It would serve no good purpose to review in detail the evidence as to how the appellant executed this trust, and performed the duties imposed upon him.

However generous his conduct may have been towards his unmarried sisters, the commissioner, in stating appellant's accounts, rightly disapproved of the lavish expenditures made by him in support of the beneficiaries of the trust, and in the improvement of the trust property. He cannot be reimbursed for the expenditures made by him in the improvements to the trust property, and they were rightly omitted by the commissioner in stating the trust account. The mode adopted by the commissioner in stating the account is just and fair to all concerned. He took, as already seen, the rental value of the property as the basis upon which the charges made by the trustee for expenditures in supporting the beneficiaries of the trust were to be allowed. Upon that basis, only about one-third of the expenditures made by the appellant were allowed as charges upon the trust property, but the balance still due is more than twice the value of the trust property. In no view, therefore, that can be taken of the case, is the value of the *corpus* of the trust more than is due to appellant and chargeable thereon. It

is not controverted that the $125.00 *per annum* as the rent of the farm " Yellow Branch" is a liberal estimate, and from the whole evidence in the case it is clear that it would have been an utter impossibility for the appellant to support the beneficiaries of the trust upon that sum. And it is equally clear, in our opinion, that, after deducting from the account of appellant, as reported by the commissioner, every item of expenditure not clearly within the contemplation of the grantor when the deed was made, or authorized by its provisions, the amount of $5,626.66 ascertained to be due to appellant will not be materially reduced. Wherefore, appellees can in no event have an interest in the farm "Yellow Branch," and it is conceded that the personal property embraced in the trust had been consumed in its use, or in the payment of the debts of the grantor, James E. Hughes.

It is earnestly argued for appellees, however, that as Mrs. Williams, before the three girls were removed from the farm, proposed to appellant that he allow her to take the girls to her home; that she would feed, clothe and educate them for the net proceeds of the farm, and he declined her offer, he should not be allowed to charge the support of the three girls upon the trust property.

A complete answer to this contention is found in the admission of Mrs. Williams that the farm, where they were alone with their father, was not a fit place for her three minor sisters, and that her offer to appellant did not include any sort of a provision for her father, who it is clearly shown was then not in a condition to provide for himself, more especially if the entire proceeds from the farm were to be turned over to Mrs. Williams. While Mrs. Williams's motive was a very worthy one, and she may have been financially able to carry out her offer to take care of and educate her three younger sisters, and the reason for appellant declining to permit her to do so may not be deemed satisfactory, it was equally as natural and worthy a motive on the part of

appellant, the oldest living brother, then in prosperous circumstances, to desire to keep the family together. Moreover, it is well worthy of note that James E. Hughes, who created the trust, for about seven years accepted its benefits, and permitted appellant to administer the trust confided to him without a murmur of objection as to the manner in which it was being administered. He might have at any time had another trustee substituted in the place of his son, who died, or might have confided the administration of the trust to another trustee, but he saw fit to take neither of these steps, which is strongly persuasive that the administration of the trust by appellant met with his approbation. There is not the slightest proof of *mala fides* on the part of appellant in anything done by him in connection with his execution of the trust. The appellee, Mrs. Williams, was cognizant of how the trust was being administered, and no objection or criticism was made by her, until the filing of her bill in this cause, more than two years after the trust had ended. The fact that no part of the *corpus* of the trust remains, grows out of the condition of its beneficiaries and their necessities, and not from any fault of appellant in the administration of the trust. He being without fault in the administration of the trust to the prejudice of appellees, and the balance due to him upon his trust account being greater than the trust subject remaining, appellees have no interest therein.

The decree appealed from will, therefore, be reversed and annulled, and the cause remanded for further proceedings therein not inconsistent with the views herein expressed.

*Reversed.*