**FIRST VIRGINIA BANK (a corporation), Administrator of the Estate of Mary E. Helms, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 73–1595.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 6, 1973.

Decided Jan. 10, 1974.

Robert O. Tyler, Washington, D. C., for appellant.

Charles R. Burnett, Atty., Tax Div. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Loring W. Post, Attys., Tax Div., U. S. Dept. of Justice, and Brian P. Gettings, U. S. Atty., E. D. Va., on brief), for appellee.

Before CLARK, Associate Justice,* BOREMAN, Senior Circuit Judge, and BUTZNER, Circuit Judge.

BUTZNER, Circuit Judge:

The First Virginia Bank, administrator c. t. a. of the estate of Mary E. Helms, appeals from a judgment of the district court denying a refund of estate taxes. The district court ruled that Mrs. Helms' gross estate included property valued at approximately $88,000 because she held a general power of appointment with respect to it. A sense of unfairness casts a shadow over this case, and others of its kind,[1] because Mrs. Helms never exercised the power, and a change in its phrasing might well have accomplished its purpose without subjecting her estate to additional taxes. Nevertheless, the Revenue Act, Treasury Regulations, and judicial precedent dictate affirmance.

Mrs. Helms' husband, Thomas W. Helms, died in 1967 at the age of 85, survived by his wife and their daughter, Edna Helms Simms. Mrs. Helms died six months later, at the age of 84. Mr. Helms wrote his own will. The second paragraph provides:

> "All my stock and holdings in the Helms Self Service Market Corporation, T. W. Helms Land Development Corporation, Grand View Hotel Corporation, I leave to my beloved wife, Mary E. Helms, for her comfort and care so long as she may live. It shall be her right to dispose, sell, trade or use said holdings during her lifetime for her comfort and care as she may see fit. At her death, all of the said holdings, if any, are to go to my daughter, Edna Helms Simms, to have and to hold as she may so decide."

The stock of the store corporation was valued at $88,000, but the stock in the other corporations had no value.

All the family, including Mrs. Simms and her children, had worked in Mr. Helms' store. They lived frugally, invested their earnings, and Mr. and Mrs. Helms accumulated jointly held property worth $305,000. In addition, from the proceeds of insurance policies, and as residuary legatee of her husband's estate, Mrs. Helms received cash and miscellaneous property aggregating some $20,000.

---

* Supreme Court of the United States, retired, sitting by designation.

1. *See e. g.* Lehman v. United States, 448 F. 2d 1318, 1320 n. 4 (5th Cir. 1971) ; Miller v. United States, 387 F.2d 866, 867 (3rd Cir. 1968).

Section 2041 of the Internal Revenue Code of 1954 [26 U.S.C. § 2041 (1970)], dealing with powers of appointment, governs taxation of the stock.[2] Subsection (a)(2) includes as a part of the decedent's gross estate the value of property over which the decedent had a general power of appointment.[3] Subsection (b)(1) defines a general power of appointment to include a power which is exercisable in favor of the decedent,[4] but with this important exception:

"A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment."[5]

Thus, the issue to be resolved is whether the power to sell the stock and spend the proceeds conferred on Mrs. Helms by her husband's will was limited to an ascertainable standard relating to her health, support, or maintenance within the meaning of the statute.

The government claims that the value of the stock must be included in Mrs. Helms' estate because she could sell it and spend the proceeds for things not related to her health, support, or maintenance. The administrator, on the other hand, contends that Mrs. Helms did not receive a general power of appointment because (1) her right to consume the property for her comfort and care is limited by state law to the frugal life to which she was accustomed—a standard of living that tolerated expenditures only for health, support, or maintenance, and (2) state law would give effect to an inference that Mr. Helms intended Mrs. Helms to use the stock for her support only after she had consumed her other ample resources.

■ Mrs. Helms' power to dispose of the stock is measured by state law. Whether her power, as defined by state law, is subject to the federal tax must be determined by federal law. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940). Therefore, Mr. Helms' will must first be examined in the light of Virginia law to determine the nature and extent of Mrs. Helms' "right to dispose, sell, trade, or use [the stock] during her lifetime for her comfort and care as she may see fit."

■ Virginia formerly held that a life estate coupled with the absolute power of disposition created a fee simple estate invalidating the remainder. May v. Joynes, 61 Va. (20 Gratt.) 692 (1871). This rule obviously could defeat a testator's intent, and, therefore, a statute was enacted to validate the remainder to the extent that the life tenant had not disposed of it.[6] The statute, however, does not restrict the life tenant's power of disposition. The most re-

2. Treas.Reg. [26 C.F.R.] § 20.2041–1(b)(1) (1973) provides in part:
"The term 'power of appointment' includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations."

3. Title 26 U.S.C. § 2041(a)(2) (1970) provides in part that a decedent's gross estate shall include the value of:
"[A]ny property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942 . . . ."

4. Title 26 U.S.C. § 2041(b)(1) (1970) provides in part:
"The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate . . . ."

5. Title 26 U.S.C. § 2041(b)(1)(A) (1970).

6. Va.Code Ann. § 55–7 (1969) provides:
"If any interest in or claim to real estate or personal property be disposed of by deed or will for life, with a limitation in remainder over, and in the same instrument there be conferred expressly or by implication a power upon the life tenant in his lifetime or by will to dispose absolutely of such property, the limitation in remainder over shall not fail, or be defeated, except to the extent that the life tenant shall have lawfully exercised such power of disposal . . . ."

cent Virginia case explaining the nature of a life tenancy coupled with a power of sale is Rawlings v. Briscoe, 214 Va. 44, 197 S.E.2d 211 (1973), which involved the construction of a will that created a life estate in the residue of the testator's property with a remainder over to designated beneficiaries. The will authorized the life tenant "to sell any or all of the said residue at her discretion and use any part of the principal thereof that may be necessary for her care and maintenance." The life tenant gave a substantial portion of the property to her grandchild. After the life tenant died, the gift to the grandchild was challenged on the ground that the life tenant was empowered to sell the property and to use the proceeds only if necessary for her care and maintenance. The Supreme Court of Virginia rejected this interpretation of the will. Upholding the gift to the grandchild, the Court ruled that the life tenant's authority to sell the property at her discretion gave "her absolute dominion over the subject property with full power of disposition." The Court added that the language concerning her "care and maintenance" merely expressed a motive for the devise and did not limit her power to dispose of the property. This decision, we conclude, establishes that Mrs. Helms' "right to dispose, sell, trade or use [the stock] during her lifetime for her comfort and care as she may see fit" was not limited by state law to an ascertainable standard relating to her health, support, or maintenance.

Hughes v. Williams, 99 Va. 312, 38 S. E. 138 (1901), on which Mrs. Helms' administrator relies, does not furnish authority for limiting Mrs. Helms' right to dispose of the stock. That case dealt with the discretion allowed a trustee in expending the principal of a trust to provide necessary supplies for the comfort of the beneficiaries, but it does not define the rights of a life tenant who possesses the power of sale. The Virginia Court has shown no disposition to treat these situations similarly. Nor do we find in state law any implied restriction on Mrs. Helms' right to sell the stock because she had other resources. Moreover, the Treasury Regulations make a restriction of this kind immaterial.[7]

In the absence of Virginia law limiting Mrs. Helms' power to consume the proceeds from the sale of the stock to an ascertainable standard relating to her health, support, or maintenance, the value of the stock must be included in her gross estate. While the power to consume need not be limited to the bare necessities of life, the Regulations specifically state:

> "A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard."[8]

---

7. Treas.Reg. [26 C.F.R.] § 20.2041–1(c)(2) (1973) provides in part:

"In determining whether a power is limited by an ascertainable standard, it is immaterial whether the beneficiary is required to exhaust his other income before the power can be exercised."

8. Treas.Reg. [26 C.F.R.] § 20.2041–1(c)(2) (1973) provides in part:

"A power to consume, invade, or appropriate income or corpus, or both, for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent is, by reason of section 2041(b)(1)(A), not a general power of appointment. A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them) . . . [T]he words 'support' and 'maintenance' are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's 'support,' 'support in reasonable comfort,' 'maintenance in health and reasonable comfort,' 'support in his accustomed manner of living,' . . . 'health,' and 'medical, dental, hospital and nursing expenses and expenses of invalidism' . . . . "

This narrow interpretation of the exemption from taxation found in § 2041(b)(1)(A) has been generally followed when the appointee could exercise the power to provide for his comfort. Lehman v. United States, 448 F.2d 1318 (5th Cir. 1971) (support, maintenance, comfort and welfare); Miller v. United States, 387 F.2d 866 (3rd Cir. 1968) (expenses incidental to her comfort and well-being); Cf. Strite v. McGinnes, 330 F.2d 234, 239 (3rd Cir. 1964) (benefit or comfort); Stafford v. United States, 236 F.Supp. 132 (E.D.Wis.1964) (care, comfort or enjoyment); *But cf.* Pittsfield National Bank v. United States, 181 F.Supp. 851, 853 (D.Mass.1960) (comfort, support and maintenance).

The district court's denial of a refund for estate taxes paid on the stock of the store corporation is affirmed, but at the suggestion of the government, the case *is remanded for consideration of* additional deductions.