John E. VAUGHN and J. L. Tompkins, III, Administrators of the Estate of Foy L. Leonard, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 80–0219–A.

United States District Court, W. D. Virginia, Abingdon Division.

March 31, 1982.

William E. Valentine, Woodward, Fox & Wooten, Roanoke, Va., for plaintiff.

Thomas R. King, Jr., Asst. U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiffs have filed this action to recover taxes and penalties paid to the Internal Revenue Service ("IRS" or "the Government"). The plaintiffs allege the estate tax deficiency assessment was erroneous on four different items and also protest the imposition of the penalty for the late filing of the Estate Tax Return. Jurisdiction attaches pursuant to 28 U.S.C. § 1346.

The plaintiffs have filed a motion for summary judgment and the defendant has filed a cross-motion for summary judgment, both motions pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motions were argued orally before the court on March 2, 1982.

The facts giving rise to this litigation are as follows:

On March 12, 1969, Joseph Hasten Leonard, the husband of the decedent, Foy Lee Leonard, executed a will, which left property to the decedent under the following language:

> Subject to the above I hereby give, devise and bequeath my entire estate of every description both real and personal to my beloved wife Foy Lee Leonard for the period of her natural life, with the right to sell any portion thereof that might become necessary for her support, personal care or medical attention and any portion thereof remaining at her death shall go to our son Robert Henry Leonard, absolutely.

Joseph Hasten Leonard died on May 12, 1971, and the will containing the language cited above was probated in Carroll County, Virginia.

On August 8, 1972, the decedent and her father, Manuel Easter, established Account No. BC–1760 at the Workmen's Federal Savings and Loan Association, Mount Airy, North Carolina, with a deposit of $12,000.00. This account was established in the names "Mr. Manuel Easter or Mrs. Foy Lee Easter

Leonard." Both the decedent and her father expressly agreed on the date this account was established that they would hold the funds in this account "as joint tenants with right of survivorship and not as tenants in common . . .".

The decedent and her father were both shot on the evening of February 3, 1975, in their home in Carroll County, Virginia. According to the Certificates of Death filed with respect to each of them, the decedent's father died in their home at 10:45 p. m. that evening, while the decedent was taken to Northern Hospital in Surry County, North Carolina, where she died at 11:58 p. m. the same evening. The decedent died intestate.

In addition to the property given to the decedent under her husband's will and the joint savings account with her father, the decedent owned four and three-quarters (4¾) acres of land and improvements in Carroll County, Virginia and an undivided one-half interest in ninety-two (92) acres of land and improvements, the location of which is not in the record.

The sole distributee of the estate was the decedent's son, Robert Henry Leonard, who was a sixteen-year-old high school student at the time of his mother's death. After the deaths of his mother and grandfather, Robert Henry Leonard began living at the home of his immediate neighbor, plaintiff John E. Vaughan. On February 12, 1975, the Clerk of the Circuit Court of Carroll County appointed Mr. Vaughan, who is a machinist, to be a joint administrator of the estate. At the request of the bonding company, the Honorable J. L. Tompkins, III, then an attorney in general practice in Hillsville, Virginia, was also appointed to be a joint administrator.

Neither of the plaintiffs personally prepared the Federal Estate Tax Return filed on behalf of the decedent. Rather, they engaged Odell E. Hamden, of the accounting firm of R. L. Persinger and Company of Galax, Virginia to prepare that return. The plaintiffs first provided Mr. Hamden with the books and records of the decedent necessary to prepare that Estate Tax Return on or about December 9, 1975, some ten months after her death.

The Federal Estate Tax Return of decedent was filed on January 14, 1976. At that time, the amount of tax declared in the return, $19,376.16, was remitted.

On or about November 29, 1978, the IRS issued a Notice of Deficiency asserting a liability for additional federal estate tax and late filing penalty on account of the estate. After the assessment was made against the estate for the additional tax and penalty, the plaintiffs paid this amount, plus interest, in full.

On December 2, 1979, the plaintiffs filed a claim for refund on Internal Revenue Service Form 843, seeking a refund of $24,-909.68. The specific grounds on which plaintiffs based that claim were set forth in a six-page attachment to the Form 843. That claim was denied in full.

The issues presented to the court are as follows:

1. Whether the valuation difference in two pieces of real estate was properly presented to the Government and if so whether the value the IRS used was proper;

2. Whether the $12,000 savings certificate was properly included in the estate of Foy Lee Leonard;

3. Whether the power granted to Foy Lee Leonard by the will of Joseph Hasten Leonard was limited by an ascertainable standard relating to her health, support or maintenance and therefore not a general power of appointment taxable in her estate; and

4. Whether there was reasonable cause for the late filing of the estate tax return and late payment of the estate taxes in order to prevent the liability for the penalty imposed.

Before instituting suit, taxpayers seeking a refund must file a claim with the Secretary of the Treasury setting forth each basis of the claim in *sufficient detail* to permit informed evaluation by the Internal Revenue Service. I.R.C. § 7422(a); Treas. Reg. § 301.6402–2(b)(1) (1954). A claim which does not set forth in detail each

ground upon which a refund is claimed "will not be considered for any purpose as a claim for refund or credit." Treas.Reg. § 301.6402–2(b)(1) (1954).

■ In this case, the taxpayers submitted a six-page brief to the Commissioner stating the bases for their claim for refund. There is nothing in that brief relating to the property or to the valuation of it. "The Commissioner, through his agents, cannot be expected to formulate from raw facts a taxpayer's unarticulated claim." *Old Dominion Box Company, Inc. v. United States,* 477 F.2d 340, 347 (4th Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). Accordingly, this court does not reach the merits of the taxpayers' claims as to the valuation of the property as the claims were not properly raised and the claim for refund may not be amended now to include claims for a refund on different grounds. *See Sappington v. United States,* 408 F.2d 817, 819 (4th Cir.), *cert. denied,* 396 U.S. 876, 90 S.Ct. 150, 24 L.Ed.2d 133 (1969). Therefore, as to this issue, the plaintiffs' motion for summary judgment is denied and the defendant's motion is granted.

■ Even if these claims had been properly raised, the court would be unable to rule in the plaintiffs' favor. "On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The plaintiffs have presented no affidavits or other evidence showing that value of the property was the value the plaintiffs assigned to it, or that the value the IRS assigned to it was erroneous. All the plaintiffs have done is show that the Government's valuation was different from the plaintiffs' valuation. Without more, the court would have to deny the plaintiffs' motion for summary judgment as to land values.

As to the issue of whether the $12,000 savings certificate should be taxed in the decedent's estate, the plaintiffs argue that there is insufficient evidence to show that Manuel Easter died before Foy Lee Leonard and that the Uniform Simultaneous Death Act adopted by both Virginia and North Carolina (Va.Code Ann. §§ 64.1–97 *et seq.* and N.C.Code Ann. §§ 28A–24–1 *et seq.* respectively) should apply.

"Under Virginia law, a decedent's personal property passes according to the law of the state where he was domiciled at his death." *French v. Short,* 207 Va. 548, 551, 151 S.E.2d 354, 356–57 (1966). Therefore, this court will look to Virginia's Uniform Simultaneous Death Act to determine if the $12,000 savings certificate should pass under it.[1]

Virginia Code § 64.1–99 reads in pertinent part:

> When there is *no sufficient evidence* that two joint tenants or tenants by the entirety have died other than simultaneously the property so held shall be distributed one-half as if one had survived and one-half as if the other had survived.

(Emphasis added.)

Pursuant to Rule 803(9) of the Federal Rules of Evidence, the defendants have introduced copies of death certificates showing that Manuel Robert Easter died "at or about 10:45 p. m." on February 3, 1975, and Foy Lee Leonard "was pronounced dead" at 11:58 p. m. on February 3, 1975.

Although Manuel Easter's death certificate is a Virginia death certificate and Foy Lee Leonard's is a North Carolina death certificate, both states have statutes that state such certificates are *prima facie* evidence of the information contained in them. Va.Code Ann. § 32.1–272(B) (Repl.Vol.1979) and N.C.Gen.Stat. § 8–35 (Repl.Vol.1981).

■ The plaintiffs have not introduced any evidence that the decedent and her father died simultaneously. Nor have the plaintiffs introduced evidence that either

---

1. The court notes that the North Carolina Simultaneous Death Act contains the same language, so that the result would be the same no matter which law applies. *See* N.C.Gen.Stat. § 28A–24–3(a).

death certificate is erroneous. The defendant has produced *sufficient evidence* that the two did not die simultaneously, and therefore, the Uniform Simultaneous Death Act, Va.Code Ann. §§ 64.1–97 et seq. does not apply, and the certificate is includable in the decedent's gross estate.

Accordingly, as to this issue, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.

Determining whether the property left to Foy Lee Leonard by her husband, Joseph H. Leonard, is subject to Federal tax is a two-step process. First, the court must look to Virginia law to determine what power or estate Foy Lee Leonard was given by the provisions in her husband's will. Second, the court looks to Federal law to determine whether the power or estate is subject to Federal tax. *First Virginia Bank v. United States*, 490 F.2d 532 (4th Cir. 1974).

If under Virginia law, Foy Lee Leonard only had a life estate limited by a power to consume the property "by an ascertainable standard relating to health, education, support or maintenance of the decedent" then the value of such property should not be included in her gross estate. I.R.C. § 2041(b)(1)(A). However, if Foy Lee Leonard had a general power of appointment or an estate in fee, then the value of this property would be included in her gross estate. I.R.C. § 2041(a)(2).

The law in Virginia since the landmark case of *May v. Joynes*, 61 Va. (20 Gratt.) 692 (1871), has consistently been "that where a life estate is given to the first taker coupled with the absolute power of disposition, the added power raises the life estate to a fee in real property and absolute ownership of personalty, and any limitations in the remainder over are void for repugnancy and uncertainty." *Rawlings v. Briscoe*, 214 Va. 44, 45, 197 S.E.2d 211, 212 (1973). *See also First Virginia Bank v. United States*, 490 F.2d 532 (4th Cir. 1974); *Mowery v. Coffman*, 185 Va. 491, 39 S.E.2d 285 (1946). The plaintiffs argue that Foy Lee Leonard did not have an absolute power of disposition and therefore her life estate would not be

"raised" to an estate in fee in the real property and absolute ownership of the personalty. The plaintiffs maintain that the provisions in Joseph Leonard's will require that Foy Lee Leonard's personal needs for "support, personal care, or medical care" must exist before the power of disposal arises and therefore she did not have an absolute power of disposition.

In *Mowery v. Coffman*, 185 Va. 491, 39 S.E.2d 285 (1946), the life tenant was given property "with full authority to dispose of any property thereof that she may deem necessary for her support and maintenance." *Id.* at 492, 39 S.E.2d at 286. The Supreme Court of Virginia held that such language merely expressed the motive for the gift and did not qualify or detract from the fee-simple estate passed to the donee. *Id.* at 494, 39 S.E.2d at 286–87.

In *Rawlings v. Briscoe*, the testator left property to his mother under the following language:

In the event my said mother should survive me and be entitled to a life estate in the residue of my estate as aforesaid, I authorize and empower her to sell any or all of said residue at her discretion and use any part of the principle thereof that may be necessary for her care and maintenance.

214 Va. at 45, 197 S.E.2d at 212. The Supreme Court of Virginia rejected the executor's argument that the restriction on the use of the principle for "care and maintenance" saved the property from the application of the rule of *May v. Joynes* and found that the testator's mother had a fee simple estate in the property. *Id.* at 47, 197 S.E.2d at 213.

In *First Virginia Bank v. United States*, 490 F.2d 532 (4th Cir. 1974), the Fourth Circuit held that the language in the will limiting the life tenant's estate to a "right to dispose, sell or trade or use [the property] during her lifetime for her comfort and care as she may see fit" by Virginia law was not limited to an ascertainable standard relating to her health, support and maintenance. *Id.* at 535. The Court therefore concluded that the value of the proper-

ty was to be included in the gross estate of the so-called life tenant. *Id.*

While it is true that no will has a "twin brother", *Searls v. Perry,* 184 Va. 1044, 1047, 37 S.E.2d 11, 12 (1946), the plaintiffs have not pointed the court to any Virginia cases, nor has the court found any by its own research, which have held that a provision such as the one in Joseph Leonard's will was treated as a life estate. In fact, *Davis v. Kendall,* 130 Va. 175, 107 S.E. 751 (1921) discusses well over twenty Virginia cases which hold once the life tenant is given an absolute power of dominion over the property there has been a gift of the property itself. *Id.* Several of the cases look to phrases such as "if there is anything left at death" to determine the testator's intent and hold that such phrasing passes an estate in fee and not a life estate. *See Brown v. Strother,* 102 Va. 145, 47 S.E. 236 (1903); *Cole v. Colel,* 79 Va. 251 (1884); *Carr v. Effinger,* 78 Va. 197 (1883).

In this case, Joseph Leonard's will contained a similar provision in that the remainderman was to receive "any portion thereof remaining" at the death of Foy Lee Leonard. Impliedly, Foy Lee Leonard could have disposed of all the property before her death; she had absolute dominion over the property given to her by her husband's will. The court therefore finds, as a matter of law, that Foy Lee Leonard had an estate in fee in the real property and absolute ownership in the personalty given to her by her husband's will and such property is therefore includable in the value of her gross estate according to the provisions of I.R.C. § 2031 and § 2041. As to the property includable in her gross estate, the defendant's motion for summary judgment is granted and the plaintiffs' motion for summary judgment is denied.

As to the final issue, Section 6651(a)(1) of the Tax Code provides that failure to file a return on the statutory date results in a penalty "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." I.R.C. § 6651(a)(1). Thus, the court must determine whether there was "reasonable cause" for filing the estate tax two months and eleven days late, and whether such late filing was caused by "willful neglect" of the administrators.

"Reasonable cause" has been interpreted by many courts to mean that the taxpayer must exercise nothing more than ordinary business care and prudence. *See Clum v. United States,* 424 F.Supp. 2 (S.D.Ohio 1976); *Giesen v. United States,* 369 F.Supp. 33 (W.D.Wis.1973); *Walnut Street Co. v. Glenn,* 83 F.Supp. 945 (W.D.Ky.1948). *See also Treas.Reg.* [26 C.F.R.] § 301.6651–1. "Willful neglect" has been interpreted to mean "intentional, knowing, or voluntary." *Walnut Street Co.,* 83 F.Supp. at 948. *See also, United States v. Murdock,* 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933).

The facts surrounding this case are of particular concern to the court. First, the appointed administrator, John E. Vaughan, was a machinist, with no experience in the administration of estates. Mr. Vaughan was the nearest neighbor of Robert Leonard, the sixteen-year-old sole beneficiary of the estate of Foy Lee Leonard. Apparently, Robert Leonard felt obligated to suggest that Mr. Vaughan be appointed an administrator since he was staying with him.

J. L. Tompkins, III was appointed as a joint administrator at the request of the bonding company. J. L. Tompkins, III was engaged in the general practice of law and had little experience in the administration of estates or the preparation of Federal estate tax returns. Tompkins admitted that he thought Federal estate tax returns were not due to be filed until fifteen months after the decedent's death, and in fact, this was the statutory time period prior to 1971.

It is clear that both Robert Leonard, sole beneficiary of the estate, and John Vaughan, co-administrator of the estate, relied upon J. L. Tompkins, III as to when the Federal estate tax return was due.

In *Gray v. United States,* 453 F.Supp. 1356 (W.D.Mo.1978), the executrix of the estate of the deceased relied upon an attorney who had over *twenty years* of experience in probate and estate administration.

*Id.* at 1358. The attorney in *Gray* was also under the mistaken impression that the estate tax returns were due in fifteen months rather than nine months. *Id.* The Court found that the executrix's reliance on her attorney to timely file the return constituted "ordinary business care and prudence" within the meaning of *Treas.Reg.* [26 C.F.R.] § 6651(a)(1) and that she was entitled to a refund of the penalty and interest wrongfully collected. *Id.* at 1361.

In *Rohrabaugh v. United States,* 611 F.2d 211 (7th Cir. 1979), the administrator of the estate, a high school graduate with little experience in business matters, employed an experienced probate attorney to handle the estate administration. *Id.* at 212. The attorney freely admitted that the failure to timely file the return, which was filed three months and one day late, was the result of an oversight on his part. *Id.* at 213. The Seventh Circuit affirmed the decision of the district court that "reasonable cause" existed and held that the penalty should be refunded. *Id.* at 219.

The Seventh Circuit emphasized several points in drawing its conclusion. First, the Supreme Court in *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933) had articulated the principle that penalties imposed under the revenue laws for "willful" conduct were designed for conduct which was intentional, knowing or voluntary as contrasted with accidental. Second, the Supreme Court in *Spies v. United States,* 317 U.S. 492, 496, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1942) said that "[i]t is not the purpose of the [tax] law to penalize . . . innocent errors made despite the exercise of reasonable care." Third, Congress chose to make the penalty a discretionary one, based upon the circumstances of each case, rather than a mandatory penalty without any regard for the circumstances surrounding the delinquency. *Rohrabaugh,* 611 F.2d at 211, 218.

The defendant principally relies upon *United States v. Kroll,* 547 F.2d 393 (7th Cir. 1977) for the proposition that a taxpayer has a "personal, nondelegable duty to file the tax return when due" or suffer the penalty imposed. *Id.* at 396. *Kroll* can easily be distinguished from the case at bar. First, the return in *Kroll* was filed more than one year after the applicable filing period. *Id.* at 395. Here, the return was filed two months and eleven days late. Second, the executor was apprised by the IRS that his return was late and he still relied upon the advice of his attorney as to when to file and filed the return over nine months later. *Id.* at 395–6. Here, once the administrators found out the return was due, it was filed within a month and a half. The Seventh Circuit found that such reliance on the attorney *after* being informed of the lateness by the IRS was not "an exercise of ordinary business care and prudence." *Id.* at 396. The Court made no decision as to the reasonableness of his reliance before that date. *Id.* at 396 n. 2.

It is clear that the Seventh Circuit did not articulate a *per se* rule because the *Rohrabaugh* decision, which found reasonable cause based upon reliance on an attorney, was decided by the Circuit after *Kroll.* Furthermore, the IRS did not treat the taxpayer in *Kroll* as if a penalty were automatic. The plaintiff received a letter from the IRS approximately three months after the return was due, advising the executor that no return had been filed and disclosed the "method by which he might be able to avoid a penalty—if the facts so warranted." *Kroll,* 547 F.2d at 395. In this case, the taxpayers received no such letter from the IRS.

■ In light of the foregoing, the court finds that Mr. Vaughan's and Robert Leonard's reliance upon J. L. Tompkins, III was an exercise of ordinary business care and prudence. While it is somewhat more difficult to find that J. L. Tompkins, III exercised ordinary business care and prudence, it is still possible. Ordinary business care and prudence does not mean a person cannot make any mistakes. J. L. Tompkins, III was a court-appointed administrator who thought he knew the correct filing date for Federal estate tax returns. Tompkins was not an experienced tax attorney, but the attorney in *Gray* was an experienced pro-

bate and estate attorney. *Gray*, 453 F.Supp. at 1358. That attorney also made the same mistake that Tompkins made— thinking the filing period was fifteen months instead of nine months. *Gray*, 453 F.Supp. at 1358. When Tompkins found out his mistake, the returns were promptly filed. This is not a situation where the taxpayer never intended to pay the tax or where the taxpayer simply procrastinated in filing the returns. The court finds that J. L. Tompkins, III exercised ordinary business care and prudence in completing his duties as co-administrator of the estate of Foy Lee Leonard.

Therefore, the defendant's motion for summary judgment as to this issue is denied and the plaintiffs' motion for summary judgment as to this issue is granted.

The defendant is ORDERED to return to the plaintiffs that amount collected from the plaintiffs as a penalty for filing the Federal estate tax return of Foy Lee Leonard two months and eleven days late.